FANNIE SABLEDOWSKY *vs.* MARION ARBUCKLE *et al.*

Argued June 24, 1892. Decided July 14, 1892.

**Estates in Futuro—Common-Law Rule Abolished.**

The common-law rule that a freehold estate to commence in the future cannot be created by deed without the intervention of a precedent estate to support it, is abolished in this state.

**Deed—Partial Invalidity.**

The provisions of a certain deed *held* to be independent of each other, so that the one is valid, although the other is void.

**Finding Justified by the Evidence.**

Evidence *held* to justify a finding that the defendant·was mentally incapacitated to execute a conveyance of his real estate.

Appeal by plaintiff, Fannie Sabledowsky, and defendant Edwin S. Chittenden, from a judgment of the District Court, Ramsey County, *Otis*, J., entered February 23, 1892.

This action was commenced in April, 1889, under the statute, to quiet title to lots two (2) and three, (3,) in block fifty-three, (53,) of West St. Paul Proper; the plaintiff claiming to be the owner in fee thereof. In September, 1877, Sarah Ann Arbuckle, being the owner in fee of the land above described, died intestate. She·left surviving her, as her heirs, Samuel C. Arbuckle, her husband, and ·the following children: Samuel C. Arbuckle, Jr., Francis Marion Arbuckle, Thomas Arbuckle, George Arbuckle, William H. Arbuckle, Alford J. Arbuckle and Ann Jane Webber. On January 13, 1886, after due proceedings had for that purpose, the Probate Court of Ramsey County assigned the property described in the complaint to the said heirs as follows: An undivided one-third to Samuel C. Arbuckle, the husband of deceased, and an undivided one-seventh of the remaining two-thirds of said property to each of the seven children above named. All of the children, except Samuel C. Arbuckle, Jr., and Alford J. Arbuckle, conveyed the land to their father, Samuel C. Arbuckle. On March 5, 1886, Samuel C. Arbuckle, Sr., executed the following deed:

"This indenture, made this fifth day of March, 1886, between Samuel Arbuckle, Sr., widower, of St. Paul, Minn., party of the first part, and Alford J. Arbuckle, of the same place, party of the second part, witnesseth: that the said party of the first party, in consideration of the sum of two dollars, and love and affection for said Alford, his son, to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, does, by these presents, grant, bargain, sell, release and quitclaim to the said party of the second part, subject to the considerations and reservations herein named, all the following pieces or parcels of land lying and being in the County of Ramsey, and State of Minnesota, described as follows, to wit: Lots two (2) and three, (3,) in block fifty-three, (53,) of West St. Paul Proper, according to the plat thereof of record in the office of the Register of Deeds of said Ramsey County. I, said Samuel Arbuckle, Sr., except and reserve to myself, so long as I may live, the full and uninterrupted use and possession of said premises, intending hereby that, after my death, my said son Alford J. Arbuckle, shall have for his support and maintenance, so long as he may live, the use, possession, rents and profits and income of said property. The title and fee of said real estate, subject to the charges and interest thereinbefore reserved and conveyed in consideration of the premises, and said Alford's unfortunate condition, I hereby convey and grant to Marion Arbuckle in trust, however, to convey the same after said Alford's death, to such persons, his heirs and assigns, as shall take good, kind and considerate care of said Alford in the future, and until said Alford's death. To have and to hold the above quitclaimed premises, together with all and singular, the hereditaments and appurtenances thereunto belonging, or in any wise appertaining, to the said person or persons herein named on the terms, conditions and trusts herein named. In testimony whereof, the said party of the first part has hereunto set his hand and seal the day and year first above written.       SAMUEL ARBUCKLE, SR.

"Signed, Sealed and delivered in presence of
      "C. N. BELL.
      "GEORGE E. BUDD."

This deed was acknowledged March 5, 1886, and recorded.   Prior
to the execution of this deed, Samuel C. Arbuckle, Sr., on February
16, 1886, executed a deed of his three-fifths share in said property
to William H. Arbuckle, but this last deed was not recorded until
May 31, 1889, after the deed to Alford was recorded.   It was found
that Alford had no notice of this deed.   On June 2, 1886, Samuel C.
Arbuckle, Sr., and Alford J. Arbuckle conveyed to William H. Ar-
buckle a part of lot three of said property, which part was conveyed
by William H. Arbuckle and wife to the plaintiff on June 2, 1886.
On May 9, 1888, a deed was executed and acknowledged by Samuel
C. Arbuckle and Alford J. Arbuckle, purporting to convey to William
H. Arbuckle all their interest in lot two, and the part of lot three
not theretofore conveyed to William H.   On May 27, 1889, William
H. Arbuckle and wife conveyed by quitclaim deed all their right,
title and interest in said lots two and three to the plaintiff.   Plain-
tiff then knew of the deed of March 5, 1886, to Alford.

Alford J. Arbuckle had been since his birth, and was at the time
of the trial, though thirty-seven years of age, almost helpless physic-
ally; his mind as undeveloped as a child's; unable to read or write,
or to talk so as to be understood.   He had little or no idea of the
nature of any business transaction.   On June 16, 1890, in proceed-
ings had in the Probate Court of Ramsey County, W. H. H. John-
ston, of St. Paul, was appointed guardian of the person and estate
of said Alford J. Arbuckle.

Since the commencement of the action, Edwin S. Chittenden ac-
quired, through a mortgage foreclosure, title to a part of the prop-
erty in dispute, and upon his application, was made a party to the
action.

The plaintiff claimed title in fee to the property in question, and
named as defendants, Marion Arbuckle, Samuel C. Arbuckle and Al-
ford J. Arbuckle, alleging that they claimed some estate or interest
in the land adverse to the plaintiff.   The defendants filed a joint
and several answer, and the guardian of Alford afterwards filed a
separate answer to the complaint, alleging the incompetency of
Alford, and setting out the deed of March 5, 1886, from Samuel C.
to Alford.   The first answer was, on the trial, stricken out as to

Samuel C. Arbuckle. Issue was joined, and the case was tried May 5, 1891, before the court, without a jury.

The court found that the plaintiff was in possession of the property; that the deed of March 5, 1886, from Samuel C. Arbuckle to Alford was valid as conveying a life estate in the property to Alford; that the deed of May 9, 1888, from Samuel C. and Alford to plaintiff was executed and delivered, but that Alford was then incapable of making the deed by reason of physical and mental incapacity; that Alford J. Arbuckle was the owner in fee of an undivided two twenty-firsts of the property, and had in addition, an estate for life in all the property, to commence on the death of Samuel C. Arbuckle; that the plaintiff and Chittenden were the owners of the rest of the property. Motions for additional findings and for a new trial were made by plaintiff, and denied. Judgment was entered in accordance with the findings, and plaintiff and defendant Chittenden appealed.

*Williams & Schoonmaker*, for appellants.

A life estate cannot be created in this state by purchase by way of a direct conveyance or release and quitclaim to take effect in future, upon the death of the grantor. Such an estate was void at common law, because there could be no present livery of seisin to support the estate. 2 Bl. Comm. 165; 4 Kent, Comm. 238. Neither can the estate be sustained upon the theory that it is a remainder limited upon a life estate reserved in the grantor. 1878 G. S. ch. 45, § 18.

The deed to Alford, being void in some of its dependent and material provisions, is void *in toto*. *Bass* v. *Veltum*, 28 Minn. 512; *Darling* v. *Rogers*, 22 Wend. 483.

The deed, if valid, was not a conveyance for a valuable consideration and hence is void as against Samuel's prior deed to William. 1878 G. S. ch. 40, § 21; *Martin* v. *Brown*, 4 Minn. 282, (Gil. 201;) *Hope* v. *Stone*, 10 Minn. 141, (Gil. 114;) *Everest* v. *Ferris*, 16 Minn. 26, (Gil. 14;) *Gesner* v. *Burdell*, 18 Minn. 497, (Gil. 444;) *Johnson* v. *Robinson*, 20 Minn. 189, (Gil. 169;) *Marshall* v. *Roberts*, 18 Minn. 405, (Gil. 365;) *May* v. *Le Claire*, 11 Wall. 217; *Rockhill* v. *Spraggs*, 9 Ind. 32; *Washband* v. *Washband*, 24 Conn. 500.

The evidence showed that while Alford was ignorant and possessed a weak mind, yet he was not a legal imbecile or *non compos mentis*. Mere mental weakness does not constitute a person a legal imbecile, and will not authorize a court of equity to set aside an executed contract. *Dennett* v. *Dennett*, 44 N. H. 531; *Corbit* v. *Smith*, 7 Iowa, 60; *Jackson* v. *King*, 4 Cow. 207; *Aiman* v. *Stout*, 42 Pa. St. 114; *Rippy* v. *Gant*, 4 Ired. Eq. 443; *Breckenridge* v. *Ormsby*, 1 J. J. Mar. (Ky.) 236. A deed of a person *non compos mentis* is voidable only, and not void. *Wait* v. *Maxwell*, 5 Pick. 217; *Jackson* v. *Gumaer*, 2 Cow. 552.

The court will not set aside the contract of a lunatic, if made fairly and in good faith, unless the parties are put in *statu quo*. There must be a restitution of the purchase money. *Eaton* v. *Eaton*, 37 N. J. Law, 108; *Arnold* v. *Richmond Iron Works*, 1 Gray, 434; *Yauger* v. *Skinner*, 14 N. J. Eq. 389; *Riggin* v. *Green*, 7 Iowa, 60; *Molton* v. *Camroux*, 2 Exch. Rep. 487; *Corbit* v. *Smith*, 80 N. C. 238; *Sprague* v. *Duel*, 11 Paige Ch. 480.

*Chas. N. Bell*, for respondents.

A deed of land to take effect upon the grantor's death is good as a covenant to stand seised to the grantee's use. *Trafton* v. *Hawes*, 102 Mass. 533; *Brewer* v. *Hardy*, 22 Pick. 376; *Steel* v. *Steel*, 4 Allen, 417; *Jackson* v. *Staats*, 11 John. 337.

Our statute has impliedly, if not directly, abolished the old common-law rule that a freehold estate to commence *in futuro* by way of deed must have a freehold estate to support it. 1878 G. S. ch. 40, § 1; 1878 G. S. ch. 45, §§ 7, 9, 10, 11, 24; *Ferguson* v. *Mason*, 60 Wis. 377. In the absence of any statutory enactment, it is not necessary that there be a precedent estate to support a future freehold estate, in this country. *Wardwell* v. *Bassett*, 8 R. I. 302; *Barrett* v. *French*, 1 Conn. 354; *Fish* v. *Sawyer*, 11 Conn. 554; *Bissell* v. *Grant*, 35 Conn. 288.

Even if the deed to Alford be declared void for uncertainty so far as it directs the conveyance of the property to "such persons as shall take good, kind, and considerate care of said Alford," it is still good as a conveyance of a life estate to Alford. These two parts of the

deed are not dependent upon each other, 4 Kent, Comm. § 313, (11th Ed.;) *Darling* v. *Rogers*, 22 Wend. 483; *Woodgate* v. *Fleet*, 44 N. Y. 1; *Carter* v. *Cocke*, 64 N. C. 239; *Van Houten* v. *First Reformed Dutch Church*, 2 Green, (N. J.) 126.

The court found that there was a good and valuable consideration for the deed to Alford and that Alford had no notice of the prior unrecorded deed from Samuel C. to William. These findings are not called in question by any assignments of error, and Alford is fully protected by the recording act, *Strong* v. *Lynn*, 38 Minn. 315.

MITCHELL, J. The trial court found that the defendant Alford J. Arbuckle was the owner in fee of an undivided two twenty-firsts of the property in controversy, and of a life estate in the other nineteen twenty-firsts, to commence at the death of his father, Samuel C. Arbuckle, Sr.,—the two twenty-firsts in fee by inheritance from his mother, and the life estate in the remainder under the deed from his father, (Exhibit A of answer,) dated March 5, 1886. The correctness of these conclusions depends mainly upon two questions, one of law and one of fact, viz.: *First*, the construction and validity of the deed of March 5, 1886, from Samuel C. Arbuckle, Sr., to the defendant Alford; and, *second*, whether said Alford was incompetent, by reason of mental incapacity, to execute the deeds (plaintiff's Exhibits A, C and D) under which plaintiff claims.

1. By the deed of March 5, 1886, Samuel C. Arbuckle, Sr., reserving a life estate to himself, assumed to convey a life estate to his son Alford, to commence at his own death, with remainder to Marion Arbuckle, in trust for such persons as should take good, kind, and considerate care of said Alford until his (Alford's) death.

The trial judge sustained the validity of this deed as a conveyance of a life estate to Alford, but held that its provisions as to the remainder were void. Plaintiff insists that the entire deed is void, because—*First*, a freehold estate to commence in the future cannot be created without a precedent particular estate to support it; and, *second*, the provisions of this deed are so dependent on each other that if part are void the whole are void.

At common law, the intervention of a particular precedent es-

tate, created at the same time, was essential to the validity of a conveyance of an estate of freehold to commence at a future time. The reason was that, without the precedent estate, there could be no livery of seisin to support the remainder; and without livery of seisin no estate of freehold could be created.    2 Bl. Comm. 165; 4 Kent, Comm. 234.

Hence a conveyance of an estate in fee or for life, to commence at the death of the grantor, (who reserved or retained a life estate to himself,) would have been void if regarded as a feoffment or bargain and sale.

The courts, however, succeeded in inventing a contrivance by which to uphold such conveyances by implying a covenant on part of the grantor to stand seised of the lands to his own use during his life, and, after his decease, to the use of the grantee. Of course, they could not be upheld in this state on any such ground, for, under our statutes, there are no implied covenants, and such uses are abolished.

The reason why, at common law, a precedent estate was necessary to support a freehold estate to commence *in futuro*, rested entirely upon the subtleties and technicalities of the feudal tenures of real property, which have no application in this state, where all lands are allodial, and not held of any superior.    Consequently we are strongly inclined to the opinion that, even in the absence of any statute on the subject, it ought to be held that the common-law rule is not applicable, but that a conveyance of a freehold estate in land to commence at a future time is valid, although no precedent particular estate is created by the conveyance.    There is no good reason in the nature of things why this ought not to be so, but our statutes recognize and impliedly authorize such conveyances.    1878 G. S. ch. 45, § 10, defines a future estate as one "limited to commence in possession at a future day, either *without the intervention of a precedent estate* or on the determination by lapse of time or otherwise of a precedent estate created at the same time."    Sections 11 and 24 of the same chapter also clearly imply that a future estate may or may not be dependent upon a precedent estate.

The second ground upon which it is claimed that the entire deed

is void is equally untenable. It is perfectly manifest that the single purpose of the grantor was to make provision for the care and support of his unfortunate son, who, because of physical and mental infirmities, had been incurably helpless, and wholly dependent on others from his birth.

This was the sole purpose of conveying him a life estate; and then, in order to hold out an inducement to others to be good and kind to the boy, he attempted to provide that upon his son's death the property should go to those who had taken good, kind, and considerate care of him during his life. It could hardly be claimed that if the father had known that this last provision, intended to insure kindness to his son, would be held invalid, he would not have made the other provision which he did for his benefit.

Plaintiff invokes the application of the rule as to wills laid down in *Darling* v. *Rogers*, 22 Wend. 483–495, to wit, "that, when a will is good in part and bad in part, the part otherwise valid is void if it works such a distribution of the estate as from the whole testament taken together was evidently never the design of the testator; otherwise when the good part is so far independent that it would have stood had the testator been aware of the invalidity of the rest." Tested by this rule, there is no room for doubt as to the effect to be given to this deed. The conveyance of the life estate to Alford, and the provision as to the remainder over, are in no way dependent upon each other. Had the grantor known that the provision as to the remainder was void, he might have made other provision as to it, but, in view of the single purpose of the conveyance, it is to be presumed that in any event he would still have conveyed the life estate to his son.

2. Upon the issue of fact as to the competency of Alford to execute the deeds conveying his interest in the property, all we deem necessary to say is that, after reading the evidence, we are clearly of opinion that it abundantly sustains the finding of the court that he "was never at any time competent or had the mental or physical capacity requisite or necessary to execute or sign, or to authorize the execution or signing of, said deeds, but that he is, and always has been, of imperfect and unsound mind, and wholly incapable of comprehend-

ing the force or effect of said deeds." Medical experts and others may testify as much as they please that his ailment is wholly physical, and that his mind is sound; that it is "good soil" and only needs cultivation; but the stubborn facts remain apparent from the evidence, that, because of this physical ailment, he has been almost entirely helpless from birth, and hence prevented from coming in contact with people and things; that he has not received a particle of education, and is consequently, although of mature years, in a state of dense ignorance, with as little idea of the nature of any business transaction, and with his intellect (such as he has) as undeveloped as if he was a mere child. It is idle to claim that such a person had any adequate comprehension of the nature and effect of a conveyance of his real estate. This disposes of the two main questions in the case; but there are several minor matters that require to be noticed.

The prior deed from Samuel C. Arbuckle, Sr., to William H. Arbuckle (through whom plaintiff also claims) cuts no figure in the case, for the reason that the court finds that the deed to Alford was executed for a good and valuable consideration paid to the grantor, and that the grantee had no notice or knowledge of the prior deed to William H. Arbuckle. The correctness of these findings is not questioned by any of the assignments of error, and, as the deed to Alford was first recorded, it is protected by the provisions of the recording act.

There is nothing in the point that the deeds from Alford should have been set aside or adjudged void only upon restitution of the consideration paid by the grantees. The decisions of the courts, and sometimes even of the same court, do not seem to be always entirely agreed as to whether in any case putting the grantee *in statu quo* can be made a condition precedent to setting aside the deed of a lunatic. Compare *Arnold* v. *Richmond Iron Works*, 1 Gray, 434, with *Gibson* v. *Soper*, 6 Gray, 279. But the doctrine of the cases most favorable to the plaintiff goes no further than to hold that the grantee must be put *in statu quo*, where the grantor was apparently of sound mind, and not known to be otherwise, and the transaction was in all respects fair and *bona fide*, and the grantor has received, and still has, the consideration of the deed.

In the present case plaintiff has not made one of these facts to appear. It does not appear that she or her grantors ever paid anything to the defendant Alford, or that he ever received a dollar for these conveyances. In fact, it appears affirmatively that he never did. Moreover, it is quite apparent, in view of the intimate relationship of the parties, that plaintiff, and those under whom she claims, must have been perfectly cognizant of Alford's mental incapacity when they obtained the conveyances.

It would seem from the evidence that two twenty-firsts of this property still belong to Samuel C. Arbuckle, Jr., and hence that the court was incorrect in holding that Alford has a life estate in nineteen twenty-firsts. But this is an error, if error it is, that does not affect the plaintiff, and as Samuel C. Arbuckle, Jr., is not a party to the action, it cannot affect or bind him.

After the commencement of this action, upon the alleged mental condition of Alford being brought to its attention, the court continued the case until his mental condition could be tested in the probate court upon an application for the appointment of a guardian for him. Thereupon proceedings were had in that court by which a guardian of his person and estate was appointed, who subsequently answered for him in this suit. Upon the trial of this cause counsel for the defendant introduced in evidence the proceedings in probate court, (and in the district court on appeal,) including the order or decree adjudging Alford's mental faculties to be imperfect, and that by reason thereof he was incompetent to have charge or management of his person or property, and ought to be placed under guardianship. The admission of this evidence is assigned as error. After reading the somewhat extended discussion between counsel and the trial court when this evidence was offered, and examining the briefs of counsel in this court, we are still left somewhat in the dark as to the purpose for which this evidence was offered, and as to the precise nature of the objection interposed to its admission. Defendant's idea seems to have been that, when taken in connection with other evidence showing that this same mental infirmity had existed without change from birth, this adjudication was competent to prove Alford's mental incapacity at the time of the execution of the deeds.

And, as near as we can understand it, plaintiff's objection to the evidence was placed, not upon the ground that the adjudication was subsequent to and did not overreach the date of the execution of the deeds, but that it furnished no sufficient ground for avoiding the conveyances, because a person's mental faculties might be so imperfect as to render him a fit subject for guardianship, and yet he not be mentally incapacitated to execute a deed.   This is undoubtedly a correct proposition of law. but this would go to the weight, and not to the competency, of the adjudication as evidence of mental incapacity.   The objection interposed was therefore not a good one. The adjudication was evidently not considered as conclusive, for the whole question of the defendant's actual mental condition at the time of the execution of the deeds was fully inquired into by parol evidence.

Judgment affirmed.          ·

(Opinion published 52 N. W. Rep. 920.)