## ALICE YOUNGERS AND OTHERS v. ADELIA JOSEPHINE SCHAFER.[1]

January 10, 1936.

No. 30,670.

[1]Reported in 264 N. W. 794.

148

 

*Ottocar Sobotka* and *George W. Markham,* for appellant.
*A. E. Bryngelson,* for respondents.

JULIUS J. OLSON, JUSTICE.

On and prior to July 29, 1929, one John Schafer, a widower, was the owner in fee of certain real estate in Pine county, this state, and on that day executed a conveyance thereof to his son John Schafer, Jr. by deed of general warranty, using a printed form therefor. In that part of the printed form wherein provisions might be inserted respecting encumbrances and in the blank space provided for such purpose the following provision was inserted:

"By this conveyance it is understood that the property cannot be sold or mortgaged for at least ten years, after the death of the father, John Schafer. Should John Schafer Jr. die before the ten years, the property is to go to his sisters, and brother, share and share alike."

The grantor died during the month of September, 1929. The grantee, John, Jr., died September 7, 1933, without issue, but survived by his wife, defendant in this cause. Plaintiffs are the sisters and brother of John, Jr.

There is no issue in respect of the facts, but as to the law applicable thereto there is real controversy. Defendant claims the property as the sole heir-at-law of John, Jr. Plaintiffs assert ownership by virtue of the second sentence of the quoted provision contained in the deed. The court found that plaintiffs were the owners of the fee and that the defendant "has no right, title, interest or estate in and to any" of the involved property, and directed that judgment be so entered. This was done, and defendant appeals.

In defendant's behalf it is urged (1) that, "The attempted restriction of the power to sell or mortgage the property for a definite

period of ten years from the death of the grantor, is a general prohibition and not confined to the grantee, * * * and attempts an unlawful suspension of the power of alienation of real estate, for a period which is fixed and definite and may extend beyond the lives of two persons in being, in derogation of the statute * * * [2 Mason Minn. St. 1927, § 8045], and is void for any and all purposes"; and (2) that the "restriction contained in the inserted clause in question if intended to change the nature of the estate granted to the grantee in the deed, would be, and is repugnant to the grant specifically made by the granting clause in the deed, and therefore void."

■ The first question to be determined is whether grantee, John, Jr., is the only person to which the suspension against alienation is directed. Clearly, if the suspension is applicable also to his brother and sisters, defendant's claim must be sustained.

That the trial court gave this question serious consideration is shown by the memorandum attached to its findings. The court "concluded that the restraint of the power to alienate had reference to John Schafer, Jr. and no one else and such being the meaning, the power would not be unlawfully restrained. The deed was apparently made out on an ordinary warranty deed blank. John Schafer, Jr. is named as party of the second part (grantee). Until the troublesome paragraph appears in the deed no other grantee had been mentioned. The scrivener then inserted that no alienation was to be made of the premises for at least ten years after the death of the grantor. This must have had reference to the grantee previously named. Then follows the provision that 'should John Schafer, Jr. die before the ten years, the property is to go to his sisters, and brother, share and share alike.' * * * There was apparently some reason why the grantor did not wish the named grantee to become absolute owner of the property until the lapse of ten years after his [grantor's] death."

The conclusion reached by the court seems sound. It is the only result that the quoted paragraph justifies. The father obviously intended his son John, Jr. to have this property. The grant was made directly to him. He, and he alone, was the sole intended

beneficiary. Only in event of his death prior to the expiration of the ten-year period next following the father's death was the property to go to grantor's other children. To construe the language otherwise is to do violence to the purpose expressly stated.

Why the father wanted his property kept free from encumbrance and not subject to alienation during the ten-year period is not disclosed. But that is unimportant. As owner he had full right to dispose of it as he saw fit. It is not an uncommon thing that a parent in disposing of his property, whether by will or grant *inter vivos,* hedges the gift in such fashion as to limit the right of alienation. The desire of the parent to keep the property within the family is often found in wills and trusts created for such purpose.

It is a well settled rule that in construing an instrument it must be considered as an entirety and that all the language used therein must be given force and effect if that can be done. "When reasonably possible a contract should be so construed as to give it effect rather than to nullify it." 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1822, and cases under note 32. "The intention of the parties is to be gathered, not from isolated clauses, but from the instrument as a whole. The court will take an instrument by its four corners in order to ascertain its meaning. So far as reasonably possible a contract is to be so construed as to give effect to every word and phrase, and harmonize all its parts." *Id.* § 1823, and cases cited under notes.

With this as a basis we can see no escape from the conclusion that the power of alienation as expressed in the quoted portion of the deed was limited to the first ten years of grantee's life next succeeding the death of grantor. If the grantee died during the intervening period the fee would at once go to the brother and sisters of the grantee. We are supported in this conclusion by well recognized authority. In Whiting v. Whiting, 42 Minn. 548, 44 N. W. 1030, testator gave to his nephew Frederick D. Whiting certain personal property. Then the will proceeded, 42 Minn. 549:

"I also devise and grant unto the said Frederick D. Whiting the above-described real estate or farm as aforesaid, and I hereby con-

vey the said real estate or farm as aforesaid to my executrix, in trust for the said Frederick D. Whiting, to be the said Frederick D. Whiting's by proper conveyance in ten years after my decease, to be his and his heirs' absolutely; but the said Frederick D. Whiting is to have the use of the said real estate or farm aforesaid, and enjoy the same during the said ten years after my decease, before said conveyance to him is made, provided the said Frederick D. Whiting shall pay all taxes assessed upon said real estate or farm aforesaid, of whatever nature, and before penalties or costs are attached to said taxes.

"And in case of the death of said Frederick D. Whiting before the said ten years shall have expired, or previous to my own decease, then said real estate or farm and all of said stock and personal property, if his death shall occur after my decease, shall go to the issue of the said Frederick D. Whiting; and his wife, if living, shall have possession and use of said real estate or farm aforesaid and the control of the same and the live stock and personal property, for the benefit of the issue of the said Frederick D. Whiting, during and until the expiration of the said ten years."

There, as here, the court was called upon to construe the language used. Judge Mitchell, speaking for the court, said, 42 Minn. 549, 550, 551:

"The testator has thrown together a number of provisions, evidently without any clear comprehension of their legal import; but the cardinal canon for the construction of wills is that the general intent of the testator overrides all mere technical and grammatical rules of construction. This intent is to be ascertained from a full view of everything within 'the four corners of the instrument;' and even the transportation of sentences and limitations is allowable, when necessary to express the clear intent and purpose of the testator. Applying these liberal but allowable rules of construction, it is not difficult to determine from this clause of the will the general purpose and intent of the devisor. It is manifest that he intended the entire beneficial interest in this land to go to the appellant and his issue; that the possession and use should go to appellant im-

mediately on the testator's decease, and, if he survived the testator 10 years, the land should be his absolutely; but that if he died within the 10 years it should then go to his issue. * * * Ignoring this attempted trust, and treating it as executed under the statute, the will, reduced to its lowest denomination, according to its legal effect amounts simply to a devise of the land to appellant in fee, with a conditional limitation in case of his death within the 10 years, upon the happening of which event his estate should terminate, and the land go to his issue. * * * This construction of the will does not render it repugnant to the statute against perpetuities, for the power of alienation would not be suspended beyond the life of appellant; for, in case of his death within the 10 years, the fee will pass to his issue, even admitting that under the last clause of this subdivision the possession would go to appellant's widow, in trust for his issue, for the remainder of the 10 years."

Other cases bearing upon this subject and fully sustaining what we have herein said are Simpson v. Cook, 24 Minn. 180; Sabledowsky v. Arbuckle, 50 Minn. 475, 52 N. W. 920; Rong v. Haller, 109 Minn. 191, 123 N. W. 471, 806, 26 L.R.A.(N.S.) 825; Mineral Land Inv. Co. v. Bishop Iron Co. 134 Minn. 412, 159 N. W. 966, L. R. A. 1917D, 900. Under the established rule of Hause v. O'Leary, 136 Minn. 126, 161 N. W. 392, the restraint upon alienation attempted to be imposed upon John Schafer, Jr. in this case was doubtless void. But for the purposes of this decision that is immaterial. In that case as in this (136 Minn. 129), "there is no general suspension of the power of alienation, but merely an attempt to deprive John of such power for a specified period. * * * As so construed, the restriction must terminate at the death of John, in any event, and the devise does not offend the statute forbidding perpetuities."

What has been said under the first subdivision virtually disposes of defendant's contentions in respect of the second point urged. It is true that the inserted clause could have been placed in the written instrument immediately following the grant. But we think that the mere placing of the clause in an inappropriate part of the deed, in view of the fact that the entire instrument is pre-

pared upon printed form and was evidently prepared by one not an expert in real estate law, in no way limits its effect. If we are to consider the instrument in its entirety and give force to what that instrument includes in all of its parts, no other conclusion than that reached by the trial court is possible.

"A remainder may be limited on a contingency, which, in case it should happen, will operate to abridge or determine the precedent estate; and every such remainder shall be construed a conditional limitation, and shall have the same effect as such limitation would have by law." 2 Mason Minn. St. 1927, § 8057.

By the terms of the above section it seems to us that the estates created by the deed are authorized. The vesting of the contingent "remainder" given to plaintiffs depends on the event that John, Jr. should die within the ten-year period. Thus the "precedent estate" of John, Jr. "will operate to abridge or determine" the estate going to plaintiffs, the "contingency" depending upon his survival of the period, so we have here a particular estate to support the remainder.

The cases cited and relied upon by defendant involve precatory language, i. e., words of recommendation, request, entreaty, wish, or expectation as distinguished from express directions. The language used by grantor is not precatory but directory and positive and as such entitled to weight and recognition. 18 C. J. 267 [§ 224] 11; ,[§ 225] b.

"The modern tendency is to. ignore the technical distinctions between the various parts of a deed and to seek the grantor's intention from them all, without undue preference to any, giving due effect to all, including both habendum and granting clause, where such can reasonably be done, in order to arrive at the true intention, even to the extent of allowing the habendum to qualify or control the granting clause where it was manifestly intended that it should do so." 8 R. C. L. pp. 1046, 1047, § 100.

By so doing we are recognizing the deed "as the witness to the contract between the parties" and as such to "speak the truth, the whole truth, and nothing but the truth." Id. pp. 1047, 1048, § 101.

Judgment affirmed.