ELLEN CROLLEY *vs.* MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

July 5, 1883.

**Eminent Domain — Land - Owner Cannot Question Unauthorized Transfer of Land to another Company after Condemnation.—** The Minneapolis & Northwestern Railway Company, a corporation authorized to construct a railroad between two points, condemned and paid for, and took for its right of way for said railroad, land of plaintiff, and, without constructing the railroad, transferred the right of way to the Minneapolis & St. Louis Railway Company, a corporation authorized to construct, maintain, and operate a railroad between the same two points, and the latter company constructed, and has since maintained and operated, its railroad over the right of way so transferred to it. *Held*, that plaintiff, whose interests are not affected by the transfer, cannot call in question the capacity of the former company to make, nor of the latter company to receive, the transfer.

**Same—Such Transfer not an Abandonment.—**Also that such transfer, though not expressly authorized by the state, was not equivalent to an abandonment of the use or the right of way.

Plaintiff brought this action in November, 1881, in the district court for Hennepin county, to recover possession of land in that county. The defendant answered March 1, 1882. On October 18, 1882, the defendant, on affidavit, moved for leave to serve an amended answer. The motion was opposed, and, after argument before *Lochren* and *Young*, JJ., was denied, the court holding that "although the defendant's laches do not seem to be excused, still, if the amendment asked for appears to be in furtherance of justice, so that a denial of it will deprive defendant of a substantial meritorious defence, it will be proper to allow it on such terms as may be just," and also holding that the proposed amendment did not present such a defence. The defendant excepted to the ruling. Thereafter, and on November 3, 1882, the action was tried before *Young*, J., and a jury, and plaintiff had a verdict. The defendant moved for a new trial on the ground (among others) that the court erred in refusing to allow the proposed amended answer to stand as the answer in the cause and in refusing

the defendant leave to amend. The motion was denied, and the defendant appealed.

*Levi, Cray & Hart,* for appellant.

*Wilson & Lawrence,* for respondent.

GILFILLAN, C. J. The action is in ejectment. The question raised here is on the denial by the court below of a motion by defendant for leave to serve an amended answer. Perhaps the court, in the proper exercise of its discretion, might have denied the motion on the ground of defendant's neglect to make it in time; but it did not deny it for that reason, but on the ground that the amended answer proposed did not set forth facts constituting a defence. As the decision was based on that ground, it is reviewable here.

The proposed amended answer set forth in substance that the Minneapolis & Northwestern Railway Company, a railroad corporation organized under the general laws of the state, for the purpose of constructing a railroad from the city of Minneapolis to the south shore of Lake Minnetonka, in 1879 ascertained, in the manner provided by law, and paid to plaintiff, the compensation for taking, and took, for a portion of its right of way for said railroad, the premises in question; and afterwards, in January, 1881, conveyed said right of way to defendant, which was authorized by Sp. Laws 1879, c. 185, to construct a railroad between the same points, and to purchase its right of way; and that defendant thereupon entered upon and constructed its railroad across the premises in question, and continues to operate its road across the same. On this answer three questions appear to be raised here: *First,* had the Northwestern Company authority to convey; and, if not, what was the effect of its conveyance to the St. Louis Company? *Second,* had the latter company capacity to receive and hold the right of way? *Third,* did the transaction between the two companies amount to an abandonment of the public use, so that the rights in the land acquired by the Northwestern Company became extinct?

Taking up the second question first,—the power of the St. Louis Company, under the third section of Sp. Laws 1879, c. 185,—the act authorizing it to construct and operate a branch line of railroad from Minneapolis to the south shore of Lake Minnetonka, gives that

company ample power to acquire, "*by purchase* or by condemnation," "all necessary rights of way," etc., and to make with any other railroad company "such arrangements for the use of any portion of its tracks and road-beds as it may deem necessary." The question of the full capacity of that company to purchase and hold the right of way acquired by the Northwestern Company is determined by that act.

It is not so clear that power to convey the right of way existed in the Northwestern Company. An argument in favor of the power to assign the right may be made from the language of Gen. St. 1878, c. 34, § 26,—the law under which its right of way was acquired. That section provides what judgment shall be entered on the verdict or assessment ascertaining the damages to be paid to owners of lands taken, and that it shall declare that, upon payment of the verdict or assessment, the right "to take, use, and appropriate any property in controversy on said appeal, for the purposes aforesaid, shall, as against the parties interested in said verdict or assessment, be and remain in said corporation, their successors and *assigns, forever.*" But the case does not turn on the construction of that statute; for whether the Northwestern Company could convey, or the St. Louis Company could receive the property, does not concern this plaintiff, unless it amounts to an abandonment. She had no interest in the right of way. So long as it continued to exist, it was immaterial to her interests whether it belonged to the former or the latter corporation, and whether the latter or the former applied it to the use for which it was taken.

In respect to conveyances to or by a corporation, no one whose interests are not affected, except the state, can call in question the capacity of the corporation either to convey or receive and hold property. As to persons whose interests are not so affected, if the state acquiesces in the exercise by the corporation of power to purchase and convey, beyond what the state has conferred on it, they have no right to complain. Morawetz on Corporations, § 117; *Natoma Water & Mining Co.* v. *Clarkin*, 14 Cal. 543; *Union Water Co.* v. *Murphy's Flat Fluming Co.*, 22 Cal. 621; *Chicago, B. & Q. R. Co.* v. *Lewis*, 53 Iowa, 101; *Chambers* v. *City of St. Louis*, 29 Mo. 543; *Martindale* v.

*Kansas City, etc., R. Co.,* 60 Mo. 508; *Goundie* v. *Northampton Water Co.,* 7 Pa. St. 233; *Grant* v. *Henry Clay Coal Co.,* 80 Pa. St. 208; *Smith* v. *Sheeley,* 12 Wall. 358; *Nat. Bank* v. *Matthews,* 98 U. S. 621. The act of the corporation is like that of an alien in jurisdictions where the rule of the common law as to the capacity of the alien to hold and convey real estate still prevails. As to every one but the sovereign, the conveyance to or by an alien is valid. *Freeman* v. *Minn. & St. Louis Ry. Co.,* 28 Minn. 443, did not decide contrary to this, but only that a railroad corporation cannot relieve itself from the duty and obligation to the state or public, imposed by its charter, by leasing its road without the consent of the state.

Was the conveyance an abandonment of the use for which the land was taken, so that it reverted to the owner free of such use? In theory the land was taken, and the right to apply it to the public use proposed acquired, for the state. It is true, the title to the right thus acquired vested in the corporation, but it so vested in it only for the purpose of employing it in the public use. So far as taking and holding lands under the sovereign right of eminent domain is concerned, railroad corporations must be deemed agencies through which the state exercises that right, to subserve the public needs. When taken for railroads, the land is taken under authority of the state, to be applied under the same authority to a public use, to wit, to a highway, public in a certain sense. Upon no other theory can the taking and holding of real estate of private persons, without their consent, be justified. It is the purpose for which the land is taken, and not the particular corporation which the state authorizes to take it, that determines whether the use is public or not.

In this case the state authorized the taking, for the purpose of a railroad from the city of Minneapolis to the south shore of Lake Minnetonka. The use would have been the same had it authorized any other company than the Northwestern to take it for that purpose. Who holds and uses the land for the purpose for which it is taken, does not affect the character of the use. So long as the land continues to be applied to the purpose for which it was taken,—to wit, as a right of way for a railroad between the two points indicated,—the use remains the same, whether it be so applied by the corpora-

tion which originally took the land, or by some other. Who owns the railroad, whose duty it is to maintain and operate it for the benefit of the state and the public, and who does in fact so maintain and operate it, is immaterial so far as the character of the use is concerned. When the St. Louis Company took the transfer of the right of way, and constructed, maintained, and operated a railroad over it, having authority from the state to acquire and hold rights of way, and to construct, maintain, and operate a railroad between the two points, it applied the right of way to the very use for which it was taken. The right of way seems to have been transferred for the purpose of having it so applied; not for the purpose of giving up the enterprise, but for the purpose of having it carried out by the grantee company. We fail to see how that can be deemed an abandonment of the use or of the right of way. A sale of a right of way is not equivalent to an abandonment. 1 Redfield on Railways, 221; Pierce on Railroads, 158; *Noll* v. *Dubuque, B. & M. R. Co.*, 32 Iowa, 66; *Hatch* v. *Cincinnati & I. R. Co.*, 18 Ohio St. 92; *Harrison* v. *Lexington & F. R. Co.*, 9 B. Mon. 470.

That the state did not expressly authorize the sale, does not, so long as it acquiesces, and so long as no one having the right to do so questions the sale, in any way affect the question of abandonment.

Order reversed.