STATE of Minnesota, by WASHINGTON WILDLIFE PRESERVATION, INC., et al., Appellants (82–150), Respondents (82–151),

v.

STATE of Minnesota and its Department of Natural Resources, et al., Respondents (82–150), Appellants (82–151).

Nos. 82–150, 82–151.

Supreme Court of Minnesota.

Jan. 14, 1983.

Broeker, Hartfeldt, Hedges & Grant, Will Hartfeldt and Samuel D. Orbovich, Minneapolis, for State of Minnesota by Washington Wildlife Preservation, Inc., et al. 82–150.

Hubert H. Humphrey, III, Atty. Gen., C. Paul Faraci, Deputy Atty. Gen., A.W. Clapp, III, and Deborah J. Topp, Sp. Asst. Attys. Gen., Dept. of Natural Resources, St. Paul, for State of Minn. and its Dept. of Natural Resources, et al. 82–151.

Briggs & Morgan and Samuel H. Morgan, St. Paul, for Minnesota Parks Foundation.

SCOTT, Justice.

Plaintiffs, members of Washington Wildlife Preservation, Inc., brought this action in response to the purchase of a railroad right-of-way by defendants State of Minnesota and its Department of Natural Resources from defendant Soo Line Railroad Company. Plaintiffs, Washington County landowners whose property adjoins the right-of-way, seek, *inter alia,* a declaration that they are the true owners of the right-of-way.

Plaintiffs moved for a partial summary judgment on their first cause of action, relating to their claim of ownership of the

right-of-way. Defendants filed a cross-motion for summary judgment or for dismissal. The Washington County District Court ordered partial summary judgment, declaring that: (1) 13 deeds by the original landowners, plaintiffs' predecessors, conveyed a fee title to defendant Soo Line's predecessor; (2) the deed from one of the original grantors, Tracy Metcalf, plaintiff GNS Investors' predecessor, conveyed only a right-of-way easement to Soo Line's predecessor; (3) Soo Line acquired a prescriptive easement only, and not fee title, to a portion of plaintiff GNS Investors' land, for which the railroad had no deed; and (4) the court expressly declined to adjudicate the rights of plaintiffs Richard and Nancy Butter in the right-of-way because it was unable to determine their original grantor (the record discloses that the Butter property does not abut this right-of-way). Both plaintiffs and defendants appealed from the portions of the order adverse to them. The trial court's order is a partial summary judgment, does not direct the entry of judgment, and contains no express determination that there is no reason to delay.[1]

The property in dispute is a strip of land in Washington County varying in width from 100 to 150 feet and extending 9.88 miles in length. The portions of the land in dispute were acquired by the St. Paul and St. Croix Railroad Company and the Minnesota, St. Croix and Wisconsin Railroad Company in 1884 and 1885. The right-of-way acquired by these railroads was transferred to defendant Soo Line.

The right-of-way was used for railroad purposes until October 1977. On January 23, 1980, the Interstate Commerce Commission issued a certificate permitting the Soo Line to abandon the portion of the line here in dispute. The certificate "conditioned [abandonment] on a public use in accordance with the plans of the Minnesota Department of Natural Resources." The order prohibited the Soo Line from selling the property for 180 days unless a binding agreement for the use of the property had been negotiated between the railroad and the DNR.

On August 22, 1980, Soo Line gave a quitclaim deed to the State of Minnesota for the land. The purchase price was $460,000. Of this amount the state paid $452,000 and the Minnesota Parks Foundation paid $8,000. Prior to the purchase of the land by the state, the plaintiffs had offered Soo Line $460,000.

The Minnesota Department of Natural Resources purchased the land for a recreational trail pursuant to Minn.Stat. § 84.029, subd. 2 (1980). Under this statute and Minn.Stat. § 85.015 (1980), the DNR has to date established 10 recreational trails on abandoned railroad rights-of-way, spending over $2,000,000 for construction and development of the trails.

Plaintiffs, landowners whose property abuts the right-of-way, claim to be the true owners of portions of the right-of-way. They formed Washington Wildlife, Inc., a nonprofit corporation, to insure that ownership of the abandoned right-of-way reverted to them and to protect natural resources intrinsic to the area. Following the conveyance of the right-of-way to the state, plaintiffs commenced this action. Plaintiffs' amended complaint asserts five "causes of action" which may be summarized as follows:

The first cause of action alleges that the individual plaintiffs hold all right, title and interest in the abandoned right-of-way by operation of law. The second cause of action alleges that Washington Wildlife, Inc., negotiated with Soo Line for purchase of the right-of-way and offered $460,000 for

---

1. Prior decisions of this court interpreting Minn.R.Civ.P. 54.02 clearly indicate that a partial summary judgment, such as was issued by the trial court in this case, is not an appealable order. *Financial Relations Board, Inc. v. Pawnee Corp.*, 308 Minn. 109, 240 N.W.2d 565 (1976); *Buchman Plumbing Co. v. Regents of University of Minnesota*, 293 Minn. 437, 196 N.W.2d 629 (1972). The purpose of the rule is to prevent piecemeal appeals and the usual unnecessary delay and expenditure of judicial and professional resources that such appeals entail. Since in this case our decision may very well be dispositive, we grant discretionary review as provided for in Minn.R.Civ.P. 105.

the property. It is alleged that Soo Line promised Washington Wildlife, Inc., a right of first refusal with respect to any conveyance of the right-of-way and that Soo Line breached this promise, making the conveyance to the state voidable. The third cause of action alleges that use of the right-of-way as a recreational trail available to random public use would destroy protectable natural resources in the area in violation of the Minnesota Environmental Rights Act. The fourth cause of action alleges that the DNR lacked the authority to purchase the property because the price paid exceeded the appraised value by more than 10 percent, and because only the plaintiffs were in a position to convey the property to the state. The fifth cause of action alleges, *inter alia,* that use of the right-of-way violates state law, is a use not authorized by the Metropolitan Council or Washington County, and constitutes a public and private nuisance damaging plaintiffs in the amount of $460,000. Plaintiffs seek various forms of injunctive and declaratory relief, as well as the damages mentioned above.

The majority of the plaintiffs' claims to ownership of portions of the right-of-way turn on the construction of 14 deeds executed in 1884 and 1885 from plaintiffs' predecessors in title to the Soo Line's predecessors in title, the St. Paul and St. Croix Railroad Company and the Minnesota, St. Croix and Wisconsin Railroad Company. Plaintiffs claim these deeds convey only a railroad right-of-way easement, and that upon abandonment of the right-of-way the underlying fee reverted to them free of the easement. Defendants claim the deeds convey absolute fee title, and deny that the right-of-way has been abandoned.

A portion of the right-of-way traverses property belonging to plaintiff GNS Investors. There is no deed or other document conveying a portion of this land to the railroad. Plaintiffs claim the railroad acquired only a prescriptive easement over the portion of GNS Investors' property for which there is no deed. Defendants claim that fee title was acquired by adverse possession.

As indicated above, the trial court found that 13 of the 14 deeds conveyed fee title to the railroads and one of the deeds conveyed only a right-of-way easement. The court also found that the railroad acquired only a prescriptive easement, and not fee title, to that portion of GNS Investors' land it occupied without a deed. The court held that there had been an abandonment of the right-of-way easement interests and that upon abandonment there was an automatic reversion to GNS Investors.

We address only those issues which we deem dispositive.

Defendants' major argument is that, even assuming the railroad acquired only an easement interest through the deeds and adverse possession, the right-of-way has never been abandoned for public travel and without such abandonment there is no extinction of the easement which would trigger plaintiffs' reversionary rights. The gist of their argument is that the right-of-way once carried trains moving people and goods, and that it now supports a path on which people move under their own power. It is argued that both are in the nature of public transportation.

In opposition, plaintiffs state their case as follows: The right-of-way was previously used for railroad purposes. Now it is used for recreational purposes totally unrelated to the use under which the right-of-way was obtained. That persons still travel over the right-of-way does not change the fact that its present contemplated use is for a purpose fundamentally different from the purpose for which it was acquired.

We agree with defendants that, assuming the railroad held only an easement interest, there has been no abandonment of the easement which would trigger plaintiffs' reversionary rights. Use of the right-of-way as a recreational trail is consistent with the purpose for which the easement was originally acquired, public travel, and it imposes no additional burden on the servient estates.

While defendants correctly assert that there has been no abandonment of the easement, they are incorrect in asserting that

without such abandonment there is no need to divine from each deed the intent of the grantor and grantee. When an easement is by grant its extent depends entirely upon the construction of the terms of the grant. *Highway 7 Embers, Inc. v. Northwestern National Bank,* 256 N.W.2d 271 (Minn.1977). The process which creates the easement necessarily fixes its extent and therefore the extent of an easement created by conveyance is fixed by the terms of the conveyance. *Minneapolis Athletic Club v. Cohler,* 287 Minn. 254, 177 N.W.2d 786 (1970). Thus, in order to determine whether the easement has been abandoned, and whether the use of the right-of-way as a recreational trail is within the scope of the easement, it is necessary to consider the language of the deeds.

It is assumed that the deeds conveyed only an easement. Significantly, however, none of the deeds expressly limit the easement to railroad purposes, provide that the interest conveyed terminates if use for railroad purposes ceases, or provide that the easement would exist only for so long as the right-of-way was used for railroad purposes. While the grantors were undoubtedly aware that a railroad would be constructed on the land, none of the deeds limit the use to railroad purposes.

In determining that there has been no abandonment of the right-of-way, it is noted initially that railroad right-of-way easements are transferable, *Crolley v. Minneapolis & St. Louis Railway Company,* 30 Minn. 541, 16 N.W. 422 (1883), and that such rights-of-way were originally acquired and are held by railroads to serve a public purpose. In *Marthens v. B. & O. Railroad Company,* 289 S.E.2d 706 (W.Va.1982), the court said:

Despite this fact, however, railroads are not viewed strictly as private corporations since they are publicly regulated common carriers. Essentially, a railroad is a highway dedicated to the public use. This dedication imports to the railroad the status of a quasi-public corporation. *Eckington & Soldier's Home R. Co. v. McDevitt,* 191 U.S. 103, 24 S.Ct. 36, 48

L.Ed. 112 (1903); *United States v. Trans-Missouri Freight Assoc.,* 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897). As such, the rights and duties of a railroad are in most instances determined by constant consultation with the public interest.

289 S.E.2d at 711.

Similarly, in *Crolley v. Minneapolis & St. Louis Ry. Co.,* 30 Minn. 541, 16 N.W. 422 (1883), in holding that the conveyance of a railroad right-of-way acquired by condemnation to another railroad did not constitute an abandonment, the court said:

Was the conveyance an abandonment of the use for which the land was taken, so that it reverted to the owner free of such use? In theory the land was taken, and the right to apply it to the public use proposed acquired, for the state. It is true, the title to the right thus acquired vested in the corporation, but it so vested in it only for the purpose of employing it in the public use. So far as taking and holding lands under the sovereign right of eminent domain is concerned, railroad corporations must be deemed agencies through which the state exercises that right, to subserve the public needs. When taken for railroads, the land is taken under authority of the state, to be applied under the same authority to a public use, to-wit, to a highway, public in a certain sense.

30 Minn. at 544, 16 N.W. at 424.

It has long been held that the holder of an easement is not limited to the particular method of use in vogue when the easement was acquired, and that other methods of use in aid of the *general purpose* for which the easement was acquired are permissible. In *Haeussler v. Braun,* 314 N.W.2d 4 (Minn.1981), the court quoted with approval the following passage from *Cater v. Northwestern Telephone Exchange Co.,* 60 Minn. 539, 543, 63 N.W. 111, 112 (1895):

If there is any one fact established in the history of society and of the law itself, it is that the mode of exercising [the public] easement is expansive, developing and growing as civilization advances. In the

most primitive state of society the conception of a highway was merely a footpath; in a slightly more advanced state it included the idea of a way for pack animals; and, next, a way for vehicles drawn by animals,—constituting, respectively, the "iter," the "actus," and the "via" of the Romans. And thus the methods of using public highways expanded with the growth of civilization, until today our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owners of the soil when the public easement was acquired. Hence it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired, but includes all new and improved methods, the utility and general convenience of which may afterwards be discovered and developed in aid of the general purpose for which highways are designed. And it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired, and are more onerous to him than those then in use.

Other courts have not limited railroad right-of-way easements strictly to railroad purposes. In *Bernards v. Link*, 199 Or. 579, 248 P.2d 341 (1952), the court held that rights under a railroad right-of-way easement were not abandoned by the conversion of the railroad line to a road for logging purposes. In *Faus v. City of Los Angeles*, 67 Cal.2d 350, 62 Cal.Rptr. 193, 431 P.2d 849 (1967), the court held that conversion of a right-of-way from streetcar service to motor vehicle service did not amount to an impermissible change in public use.

■ The right-of-way in this case will be used by hikers, bikers, cross-country skiers and horseback riders. The right-of-way is still being used as a right-of-way for transportation even though abandoned as a railroad right-of-way. Recreational trail use of the land is compatible and consistent with its prior use as a rail line, and imposes no greater burden on the servient estates.

The use is a public use, which is consistent with the purpose for which the easement was originally acquired. State and federal statutes encouraging the conversion of railroad rights-of-way to recreation trails also support our holding. See Minn.Stat. § 84.-029 (1980); 49 U.S.C.A. 10906 (West Supp. 1982).

*Pollnow v. State Dept. of Natural Resources*, 88 Wis.2d 350, 276 N.W.2d 738 (1979), relied on by plaintiffs, is not controlling. There the court held that use of a railroad right-of-way as a recreational trail constituted abandonment of the easement. The court also said:

We make no holding as to the power of the Congress or the state Legislature to preserve the rights of the public in existing rail corridors for multiple public uses, including transportation, conservation or recreation. That question must be deferred to an appropriate case.

88 Wis.2d at 367, 276 N.W.2d at 746. At the time of the sale, Wisconsin did not have a law addressed to acquiring railroad rights-of-way, and Congress had not yet enacted the following:

Offering abandoned rail properties for sale for public purposes

When the Interstate Commerce Commission finds under section 10903 of this title that the present or future public convenience and necessity require or permit abandonment or discontinuance, the Commission shall find further whether the rail properties that are involved in the proposed abandonment or discontinuance are suitable for use for public purposes, including highways, other forms of mass transportation, conservation, energy production or transmission, or recreation. If the Commission finds that the rail properties proposed to be abandoned are suitable for public purposes, the properties may be sold, leased, exchanged, or otherwise disposed of only under conditions provided in the order of the Commission. The conditions may include a prohibition on any such disposal for a period of not more than 180 days after the effective date of the order, unless the

properties have first been offered, on reasonable terms, for sale for public purposes.

49 U.S.C.A. § 10906 (West Supp.1982). This law was in effect when the Interstate Commerce Commission authorized the Soo Line Railroad to discontinue service on the subject right-of-way. The abandonment for railroad purposes is conditioned on a public use in accordance with the plans of the Minnesota Department of Natural Resources. The ICC found that the properties to be abandoned were suitable for other public purposes and the railroad was ordered to devote 180 days to negotiating a binding agreement with the Department of Natural Resources for the use of the property. The situation here is very different from what confronted the *Pollnow* court.

 Two other issues raised by plaintiff landowners on the abandonment issue deserve brief comment. First, it is argued that the DNR lacks authority to acquire railroad rights-of-way for recreational trails unless such rights-of-way have been abandoned. Plaintiffs rely on Minn.Stat. § 84.-029, subd. 2, which permits the DNR to acquire easements or other interests in land for trails "when railroad rights-of-way are abandoned." It is claimed that the DNR lacks authority to acquire the right-of-way unless it has in fact been abandoned.

There is no merit to that argument. The "abandoned" railroad rights-of-way referred to in the statute include those which have been abandoned only for railroad purposes.

Similarly, there is no merit to the argument that abandonment of the right-of-way occurred on January 23, 1980, when the ICC issued the abandonment certificate. The issuance of the ICC certificate of abandonment does not necessarily indicate an intention to abandon. *See, e.g., Hennick v. Kansas City Southern Ry. Co.,* 364 Mo. 883, 269 S.W.2d 646 (1954). While the certificate permits abandonment for railroad purposes, it expressly contemplates continued use of the right-of-way for another public purpose. The easement was not abandoned for all purposes of public travel.

We therefore must reverse the trial court on this issue. We consider this holding dispositive of the matter before us; we therefore need not reach the other issues. The right-of-way has been purchased by the state. The state's use of the right-of-way as a recreational trail is within the scope of the interest it acquired. The right-of-way has not been abandoned; therefore, the adjoining landowners' rights, if any, to the property free of the easement have not yet matured.

Reversed in part and remanded.