**STATE of Minnesota, through its DEPARTMENT OF NATURAL RESOURCES, Respondent,**

**v.**

**Duwayne HESS, et al., Appellants,**

**The First National Bank of Bemidji, Defendant.**

No. C4-02-2049.

Court of Appeals of Minnesota.

July 29, 2003.

Mike Hatch, Attorney General, Dulcie Brand, Assistant Attorney General, St. Paul, MN, for respondent.

Jerry O. Relph, St. Cloud, MN, for appellants.

Considered and decided by WILLIS, Presiding Judge, FORSBERG, Judge,\* and HUSPENI, Judge.

\* Retired judges of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

HUSPENI, Judge.\*

On appeal from summary judgment in this quiet-title action, appellant landowners argue that (1) the district court ignored limiting language in an 1898 deed and misread the deed to convey a fee simple determinable rather than an easement to a prior interest holder; and (2) respondent state took no rights in the property because the easement was abandoned by the time of the transfer to the state. Because we conclude that by its plain language, the 1898 deed operated to convey an easement in the subject property rather than a fee simple determinable, and that the railroad abandoned its easement in the property before the sale of its interest to the state for a public recreational trail, we reverse.

## FACTS

Respondent State of Minnesota through its Department of Natural Resources (DNR) brought this quiet-title action to determine the status of title to a strip of land, formerly used by the Burlington Northern Railway Company (BNRC) as a railroad corridor and currently designated as part of the Paul Bunyan State Trail. Appellants Duwayne Hess, Brian Sandberg, and Amelia Sandberg have claimed ownership of the property and have blockaded the trail, preventing public use of a portion of the trail. Appellants claim that a deed executed in 1898 granting a right-of-way to the railroad conveyed only an easement, rather than a fee simple determinable, and that the railroad abandoned its easement in the right-of-way before it was conveyed to the state for a public recreational trail.

Minn. Const. art. VI, § 10.

On April 1, 1898, the then-owners of the property in question signed a deed conveying an interest in certain-described property located in Cass and Hubbard Counties to the Brainerd and Northern Minnesota Railway Company. The deed stated that the owners did

> hereby grant, bargain, sell and convey unto the said company, its successors and assigns, a strip, belt or piece of land, one hundred feet, wide, * * *.
>
> * * * *
>
> Provided That this Grant or Conveyance shall continue in force so long as the said strips of land shall be used for Right of Way and for Railway purposes; but to cease and terminate if the Railway is removed from the said strips.

The deed also contained language conveying the right to erect snow fences within one hundred fifty feet of the center line of the strips.

The railroad's interest in the subject property was subsequently transferred to the BNRC, then known as the Minnesota and International Railway Company. In 1985, the BNRC received a certificate of abandonment from the Interstate Commerce Commission (ICC), allowing the company to discontinue service on the rail line between Brainerd and Bemidji, Minnesota. In its decision granting a certificate of abandonment, the ICC found that "[p]ortions of the right-of-way are suitable for other public purposes." The ICC denied, however, a request by the Minnesota Department of Transportation (MNDOT) and the City of Blackduck to declare the property suitable for public use for acquisition as part of the State Rail Bank Program. The ICC noted that a "public use" did not include keeping the track and materials intact for future rail freight use and that MNDOT had failed to submit the required information for seeking a public use condition. BNRC later attempted unsuccessfully to sell the property as a tourist line. The company removed its tracks from the right-of-way in 1986 or 1987.

In 1988, the Minnesota legislature authorized the purchase of the railway corridor by the DNR to create the Paul Bunyan State Trail for public recreation. *See* 1988 Minn. Laws ch. 679. Consequently, the BNRC negotiated a sale of the property for $1,526,000 and conveyed the corridor to the state by quitclaim deed in 1991. The DNR opened the recreational trail for public use in December 1991. Since it opened, the DNR has maintained the trail, which has been used for snowmobiling, walking, bicycling, and horseback riding.

Appellant Hess acquired his interest in the subject property from his parents by contract for deed in 1992 and a warranty deed in 1995, after the trail was opened for public use. Appellants Sandberg acquired their parcels by warranty deed in 1977, 1993, and 1995. All of the warranty deeds stated that they were subject to easements of record.

The DNR maintained the trail in the disputed area until 1998. In October 1998, appellants installed trail blockades, claiming ownership of part of the trail right-of-way. After unsuccessful attempts to resolve the land ownership dispute, the DNR filed this quiet-title action. In May 2002, a DNR representative, responding to a call from the public, observed that excavation work had taken place on the Sandbergs' property and the right-of-way, removing vegetation and topsoil. The Sandbergs expressed an intention to use about one-half mile of the trail surface as part of a driveway and finish an access road leading off the trail surface.

The district court issued a temporary injunction prohibiting the Sandbergs from driving vehicles on the trail, digging in

the right-of-way, and using part of the trail as a driveway. Both the state and the appellants moved for summary judgment. Appellants' motion was denied; that of the state was granted. In granting summary judgment for the state, the court concluded that the 1898 deed conveyed a fee simple determinable, that the Marketable Title Act, Minn.Stat. § 541.023 (2002), extinguished any subsequent limitation on the conveyance, and that the state was, therefore, the fee simple owner of the property. This appeal followed.

## ISSUES

I. Did the district court err in determining that limiting language in an 1898 deed conveying an interest to a railroad created a fee simple determinable interest rather than an easement?

II. Did the railroad abandon its easement in the right-of-way, following a Certificate of Abandonment issued by the Interstate Commerce Commission, and removal of tracks from the right-of-way?

## ANALYSIS

### I.

On an appeal from summary judgment, this court asks whether genuine issues of material fact exist and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The reviewing court is not bound by and need not give deference to the district court on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). The question of whether the 1898 deed conveyed an easement or a fee simple determinable interest to the rail-road presents a legal issue. Therefore, we review on a de novo basis.

The state argues, and the district court held, that the 1898 deed conveyed to the railroad a fee simple determinable interest, with a possibility of reverter. The district court then concluded that, pursuant to the Minnesota Marketable Title Act, absent any notice of claim to the contrary within 40 years after the 1898 deed, the state took fee title to the property with the 1991 quitclaim deed. *See* Minn.Stat. § 541.023 (2002). Appellants maintain, however, that the 1898 deed created only an easement and that the easement was abandoned by the railroad before the conveyance to the state. Therefore, argue appellants, the 1991 quitclaim deed failed to convey an interest to the state because the railroad had no rights to convey.

To resolve the question of whether the 1898 deed conveyed a fee simple determinable interest with a possibility of reverter or only an easement, we must examine the deed itself to determine the intent of the parties executing it. *See Norton v. Duluth Transfer Ry. Co.*, 129 Minn. 126, 151 N.W. 907 (1915) (interpreting language of deed conveying interest in land to railway company). In examining the deed, this court examines the whole instrument, construing all of its provisions together. *Id.* at 130, 151 N.W. at 908.

In *Norton*, the Minnesota Supreme Court interpreted the following language in a deed to a railroad:

[The parties] grant, bargain sell, and convey [the described land] [t]o have and to hold * * * for and so long as the same shall be used as a right of way for tracks and side tracks and a railroad way for its railroad cars * * * and for any other uses consistent with or embraced in the purposes and general nature of the business of said grantee * * *.

*Id.* The court in *Norton* concluded that the parties intended to convey only an easement, vesting in the company the right to use the land only so long as it was devoted to the stated purpose. *Id.* at 131, 151 N.W. at 908. Similarly, in *Chicago Great W. Ry. Co. v. Zahner*, 145 Minn. 312, 177 N.W. 350 (1920), also a case involving a railroad, the Minnesota Supreme Court interpreted a deed conveying an interest in certain property to plaintiff railroad company,

> its successors and assigns, forever * * * to have and to hold * * * such portions of lots three and four being deemed necessary and to be used for a track contemplated and to be laid by said Chicago Great Western Railway Company on said land for commercial purposes.

*Id.* at 314, 177 N.W. at 350 (quotations omitted).

While noting that "[a]n easement granted to a railway is essentially different from any other[,][t]he nature of railway service requires exclusive occupancy," *id.* at 316, 177 N.W. at 351 (citation omitted), the *Zahner* court nonetheless ruled that the deed in that case created an easement and not a fee simple determinable interest.

The state argues that in this case the 1898 deed created a fee simple determinable interest and supports its argument with decisions regarding interests in land deeded for the purposes of parks and schools. *See Cons.Sch. Dist. No. 102 of Washington County v. Walter*, 243 Minn. 159, 163, 66 N.W.2d 881, 884 (1954) (construing reversionary language in a deed that conveyed land in trust for use as a school site as creating a determinable fee); *see also Edling v. Stanford Township*, 381 N.W.2d 881, 885 (Minn.App.1986) (construing language in a deed, "[t]o have and to hold * * * so long as [said property was used] for park purposes" to create a fee simple determinable). But the supreme

court in *Walter* specifically distinguished the fact situation in that case from those in *Norton* and *Zahner*, stating, "In both [*Norton* and *Zahner*] a railroad right of way was involved and the court properly gave effect to the unmistakable intent of the parties." 243 Minn. at 162, 66 N.W.2d at 883.

The state also maintains that the placement of the phrase "right of way" in the limiting (habendum) clause of the deed rather than the granting clause indicates a limitation of time period rather than use, and that the use of the language "so long as" indicates an intent to create a determinable fee. But the deed in *Norton*, which was held to create an easement, contained the language "so long as" and referred to a right-of-way in the limiting clause as well. *Norton*, 129 Minn. at 130, 151 N.W. at 908. Similarly, the existence of other provisions in the 1898 deed that convey different parcels of land, or refer specifically to a different easement, does not weaken the construction of the relevant language in the deed to convey an easement.

We have found no Minnesota appellate cases in which right-of-way deeds to railroads have been construed to convey fee title. The primary purpose of such deeds has, rather, been determined to provide a right-of-way for use by the railroad during the period of time that the railway operated on the land subject to the conveyance. We therefore conclude that the limiting language in the 1898 deed,

> so long as the land shall be used for Right of Way and for Railway purposes; but to cease and terminate if the Railway is removed from the said strips,

reflects the parties' intent that the deed convey an easement, rather than a fee simple determinable, in favor of the railroad and its successors in interest.

## II.

██ We next consider whether, on these facts, the railroad abandoned its easement in the right-of-way so that the appellants succeeded as fee owners to the property, unburdened by the easement.

> A claim of abandonment can be upheld only where nonuse is accompanied by affirmative and unequivocal acts indicative of an intent to abandon and is inconsistent with the continued existence of the easement.

*Richards Asphalt Co. v. Bunge Corp.*, 399 N.W.2d 188, 192 (Minn.App.1987) (citation omitted). The intent

> need not appear by express declaration, but may be shown by acts and conduct clearly inconsistent with an intention to continue the use of the property for the purposes for which it was acquired.

*Norton*, 129 Minn. at 132, 151 N.W. at 909. A change in conditions that originally caused the creation of the easement is taken into account in determining intent to abandon. *Simms v. William Simms Hardware, Inc.*, 216 Minn. 283, 292, 12 N.W.2d 783, 788 (1943).

The state, while continuing to urge that the 1898 deed conveyed a fee simple determinable interest, maintains that even if only an easement was conveyed, the railroad did not abandon that easement. The state cites as support for its non-abandonment argument *State by Washington Wildlife Pres., Inc. v. State*, 329 N.W.2d 543 (Minn.1983). In *Washington Wildlife*, plaintiffs whose property adjoined a railroad right-of-way, which was subsequently used as a public recreational trail, sought a declaration that they were the true owners of the right-of-way. The supreme court held that, assuming that the railroad ac-

quired only an easement interest in the right-of-way,[1] there had been no abandonment. In so holding, the court observed:

> Significantly, however, none of the deeds expressly limit the easement to railroad purposes, provide that the interest conveyed terminates if use for railroad purposes ceases, or provide that the easement would exist only for so long as the right-of-way was used for railroad purposes.

*Id.* at 546. Thus, the supreme court noted that the property in question would still be used as a right-of-way for transportation by hikers, bikers, cross-country skiers, and horseback riders, even though it had been abandoned as a railroad right-of-way. *Id.* at 547.

> Recreational trail use of the land is compatible and consistent with its prior use as a rail line, and imposes no greater burden on the servient estates. The use is a public use, which is consistent with the purpose for which the easement was originally acquired.

*Id.* The supreme court additionally concluded that an ICC certificate of abandonment did not indicate an intent to abandon because it expressly contemplated continued use of the right-of-way for a different public purpose. *Id.* at 548.

The state urges that the facts of this case parallel the facts in *Washington Wildlife* because the new public recreational trail is compatible with the prior railroad use of the right-of-way for a public purpose. But we find the facts in the two cases starkly different. While we recognize the commendable use to which the state has put the property here, we conclude that the factual distinctions between this case and *Washington Wildlife* make it impossible to reach a decision similar to

---

1. Although the district court had held that 13 of the 14 deeds at issue in that case conveyed fee title, the supreme court based its decision on the assumption that the railroad acquired only an easement interest. *See Washington Wildlife*, 329 N.W.2d at 544–45.

the one reached in that case. In contrast to the deed in *Washington Wildlife*, the deed in this case provides specifically that the railroad's interest would terminate "if the Railway is removed from the said strips." Surely, we are not unsympathetic to the reuse of railway lines as public recreational trails. But the removal of the tracks in 1986 or 1987, after BNRC failed to sell its rights in the property for a tourist line, can only be construed as the removal of the railway from the right-of-way and an abandonment of the easement. *See Norton*, 129 Minn. at 132–33, 151 N.W. at 909 (holding that railroad's complete removal of tracks after ten years of nonuse proved intent to abandon easement). This is especially true here when the ICC, in issuing its certificate of abandonment, specifically denied a request that the property be determined suitable for public use for acquisition as part of the State Rail Bank Program. *Cf. Washington Wildlife*, 329 N.W.2d at 548 (ICC certificate of abandonment expressly contemplated continued use of right-of-way for another public purpose). To hold otherwise would be to unduly restrain the adjoining landowners' use of their property for an indefinite period of time.

The facts of this case compel a conclusion that the easement granted by the 1898 deed was abandoned by the removal of the tracks, thus fulfilling the limitation provided in the deed that the grant would cease and terminate "if the Railway is removed from the said strips." Also notable in our conclusion of abandonment is the ICC's denial, in issuing its certificate of abandonment, of a request that the property be determined suitable for public use for acquisition as part of the State Rail Bank Program.

Finally, because we have concluded that the 1898 deed created only an easement, Minn.Stat. § 541.023, the Marketable Title Act, is inapplicable, and we do not address the argument raised by the state that because its interest exceeded 40 years, appellants had no reverter interest in the property. *See* Minn.Stat. § 541.023 (stating that if a party fails to record notice of a certain interest within the 40–year statutory period, the interest not so recorded is subject to the MTA's conclusive presumption of abandonment).

## DECISION

The specific language used in the 1898 deed reflects the intent to convey an easement consisting of a strip of land to be used for right-of-way and railroad purposes. The railroad's subsequent receipt of a certificate of abandonment from the ICC without a designation of public use, and its subsequent removal of the railroad tracks, evidence an intent to abandon that easement. Therefore, appellant property owners remain the fee owners of the land in question.

**Reversed.**