[No. 9041.    Department Two.    November 15, 1910.]

PACIFIC IRON WORKS, *Respondent*, v. BRYANT LUMBER & SHINGLE MILL COMPANY, *Appellant*.[1]

PUBLIC LANDS—SHORE LANDS—PREFERENCE RIGHT TO PURCHASE—VALUABLE IMPROVEMENTS. The owner of a foundry is not entitled to a preference right to purchase shore lands as the owner of "valuable improvements" prior to March 26th, 1890, pursuant to Rem. & Bal. Code, §§ 6750, 6754, by reason of the erection of an "office building" constructed by one man in two or three days, and a coke shed of the capacity of one-half ton, the latter probably erected after March 26th, and the former at some indefinite time after December 24th, 1889, the value of the buildings not being shown; especially in view of the fact that the state had asserted its title to all tide lands November 11, 1889.

DEEDS—GRANTS—EASEMENTS—RIGHT OF WAY. A right of way deed releasing and forever quitclaiming a strip for railway purposes, to revert to the grantors if ceased to be used for such purposes, grants an easement only, although some language in the granting and habendum clause is appropriate to convey the fee.

PUBLIC LANDS—SHORE LANDS—PREFERENCE RIGHT TO PURCHASE—RIGHTS OF ABUTTERS—CONVEYANCE OF EASEMENT. The grant of an easement for a railway right of way along a shore line extending to or below high water mark does not convey or affect the grantor's preference right to purchase shore lands from the state as the owner of abutting uplands, under Rem. & Bal. Code, §§ 6750, 6754.

[1]Reported in 111 Pac. 578.

Appeal from a judgment of the superior court for King county, Kauffman, J., entered June 30, 1910, upon findings in favor of the plaintiff, upon an appeal from a decision of the state board of land commissioners, in a contest over the preference right to purchase shore lands. Reversed.

*Roberts, Battle, Hulbert & Tennant* and *J. L. Corrigan*, for appellant.

*James Kiefer*, for respondent.

RUDKIN, C. J.—This is an appeal from a judgment of the superior court of King county, reversing a decision of the board of state land commissioners, which awarded to the appellant the preference right to purchase certain shore lands of the first class on Lake Union. By §§ 6750 and 6754, Rem. & Bal. Code, the preference right to purchase tide and shore lands of the first class is granted, for a limited period, to the following persons, and in the following order: First, to the owners of valuable improvements in actual use, prior to the 26th day of March, 1890, for commerce, trade, residence or business; second, to *bona fide* purchasers from the abutting upland owners; and third, to the abutting upland owners. The respondent claims the preference right solely as an improver of the shore lands, while the appellant claims as an improver, an upland owner, and as a *bona fide* purchaser from the upland owner.

In view of the singleness of its claim, we will first consider the case presented by the respondent. The facts, in brief, are as follows: Some time prior to the 24th day of December, 1889, Goddard Brothers, the predecessors in interest of the respondent, Pacific Iron Works, purchased lots 10 and 11 of Denny & Hoyt's Supplemental plat to the city of Seattle, and constructed a foundry and machine shops thereon. At or about the same time, one Mary A. F. Phillips, predecessor in interest of the appellant, Bryant Lumber & Shingle Mill Company, purchased lots 8 and 9 of the same plat, and

soon thereafter she, or her successor in interest, the Freemont Manufacturing Company, built a wharf and constructed a three-story sash and door factory thereon. The sash and door factory was destroyed by fire on the 24th day of December, 1889, and whatever rights Goddard Brothers acquired as improvers were so acquired between that date and the 26th day of March, 1890, a period of about three months. The testimony is very meager and indefinite as to the extent or character of the improvements made by Goddard Brothers, or as to the time when they were made, and there is an entire lack of testimony as to the value of any such improvements. The fire which destroyed the sash and door factory established by the Freemont Manufacturing Company on lots 8 and 9 left the piling, and a part of the covering on which the super-structure was erected, intact. Some time after the fire, but whether prior to March 26, 1890, is extremely doubtful, Goddard Brothers built what is called an office building on this piling or platform. There is no description of the building in the record except such as the name might indicate, and no testimony whatever as to its value. It does appear, however, that it took one of the Goddards two or three days to construct the building. A coke shed was likewise constructed, partly on these lots and partly on an adjacent railroad right of way. This was, in all probability, after March 26, 1890. The testimony is equally indefinite as to the character of this building, aside from the fact that it was an open shed capable of holding about a half ton of coke. Its value it not shown. These two structures are the sum total of the improvements upon which the respondent bases its preference right to purchase, and we have no hesitation in declaring that Goddard Brothers were not the owners of valuable improvements on these lots in actual use for commerce, trade, residence or business, on or at any time prior to March 26, 1890, within the meaning of the law. *Globe Mill Co. v. Bellingham Bay Imp. Co.*, 10 Wash. 458, 38 Pac. 1112; *Barlow v. Gamwell*, 12 Wash. 651, 42 Pac. 115.

By section 1 of article 17 of the state constitution, which became operative November 11, 1889, the state asserted its title to all tide and shore lands, and the Goddards were aware of this, both as a matter of law and as a matter of fact. It is highly improbable that they would thereafter construct improvements of any considerable value on state property, and an examination of the record convinces us that they did not. The judgment of the court below must therefore be reversed, in so far as it awards the preference right of purchase to the respondent.

We will next consider the basis of the appellant's claim. Whether it acquired a preference right by reason of the improvements which were destroyed by fire on December 24, 1889, we deem it unnecessary to inquire, nor will we inquire whether any part of lots 8 and 9 is upland as claimed. This leaves only the question of its rights as a purchaser from the abutting upland owner. The predecessor in interest of the appellant was confessedly a purchaser in good faith from the upland owners, unless her grantors ceased to be upland owners prior to the date of the conveyance under which the appellant claims, by reason of a grant of a right of way to the Seattle Lake Shore & Eastern Railway Company. The facts in relation to this latter grant are as follows: On the 6th day of September, 1887, Thomas Burke and wife, owners of the abutting upland, conveyed a right of way to the Seattle Lake Shore & Eastern Railway Company along the shore of Lake Union. Immediately in front of the lots in question, the right of way extended to or below the line of ordinary high water in the lake. The right of way deed remised, released, and forever quitclaimed to the company, a right of way 100 feet in width "to have and to hold the said premises with the appurtenances unto the said party of the second part and to its successors and assigns forever, *for railway purposes, but if it should cease to be used for a railway the said premises shall revert to said grantors, their heirs, executors, administrators or assigns.*" If this were a

grant in fee simple, it would, perhaps, have the effect claimed for it by the respondent, but, in our opinion, it was not.

While some of the language contained in the deed might imply such a grant, when the instrument is construed as a whole and in the light of the purpose for which the grant was made, it is a grant of a right of way or easement and nothing more.

"The grant of a right of way to a railroad company is the grant of an easement merely and the fee of the soil remains in the grantor.    Although the language used in the granting part of the deed and in the *habendum* is appropriate, and that commonly used to convey the fee, yet the clause descriptive of the use to be made of the land may so limit or qualify the grant as to change it from a fee to an easement."    14 Cyc. 1162; *Robinson v. Missisquoi R. Co.*, 59 Vt. 426, 10 Atl. 522.

Such being the nature of the grant, it neither conferred a preference right to purchase the adjacent shore lands on the grantee, nor deprived the grantors of their rights as upland owners.    *Gifford v. Horton*, 54 Wash. 595, 103 Pac. 988, and cases cited.

We are therefore of opinion that the appellant has the preference right to purchase the shore lands in question as a *bona fide* purchaser from the abutting upland owners, and the judgment of the court below is accordingly reversed, with directions to enter judgment affirming the decision of the board of state land commissioners.

Dunbar, Crow, Morris, and Chadwick, JJ., concur.