**STATE of Minnesota, through its Department of Natural Resources, Appellant,**

v.

**Duwayne HESS, et al., Respondents,**

**The First National Bank of Bemidji, Defendant.**

**No. C4–02–2049.**

Supreme Court of Minnesota.

July 29, 2004.

. Mike Hatch, Minnesota Attorney General, Dulcie M. Brand, Assistant Attorney General, St. Paul, for Appellant.

Jerry O. Relph, St. Cloud, for Respondents.

B. Andrew Brown, Robin M. Wolpert, Dorsey & Whitney L.L.P., Minneapolis, Andrea C. Ferster, General Counsel, Washington, D.C.(of counsel), David C. Forsberg, Peter H. Seed, Briggs and Morgan, P.A., St. Paul, for Amici Curiae.

## OPINION

ANDERSON, PAUL H., Justice.

Appellant State of Minnesota, through its Department of Natural Resources (DNR), brought this quiet title action to determine ownership of a strip of land formerly used as a railroad corridor and currently used as part of the Paul Bunyan State Trail. Respondents Duwayne Hess, Brian M. Sandberg, and Amelia A. Sand-

berg claim ownership of parts of the old railroad corridor, which corridor passes through and borders their real property in Hubbard County. The issue before us is whether an 1898 deed, which purports to convey the land used for the railroad corridor to a railroad company for right of way and for railway purposes, conveys an easement or a fee simple determinable. The district court granted summary judgment for the state, concluding that the 1898 deed conveyed a fee simple determinable and that the Marketable Title Act, Minn. Stat. § 541.023 (2002), extinguished any subsequent limitation on the conveyance. The court of appeals reversed, holding that the 1898 deed conveyed only an easement. We reverse the court of appeals.

On April 1, 1898, Thomas B. Walker[1] and his wife Harriet G. Walker, and W.T. Joyce and Clotilde G. Joyce, conveyed their interests in the real property in question to the Brainerd and Northern Minnesota Railway Company "for and in consideration of" one dollar. The signed deed, written by hand, states that the grantors

hereby grant, bargain, sell and convey unto the said company, its successors and assigns, a strip, belt or piece of land, one hundred feet, wide, extending across

the following lands in Cass and Hubbard Counties, State of Minnesota, described as follows to wit * * *.

Following a detailed description of the property conveyed and also following language conveying the right to erect snow fences up to 150 feet from the center line of the railway, the deed states that the grantors

hereby release all damages and claims thereto, to all _____ lands,[2] by reason of or occasioned by the Location, construction, or operation of a Railway over and upon the premises hereby conveyed. And the said Harriet G. Walker and _____ hereby _____ their rights of dower in the tracts hereby conveyed.[3]

Provided that this Grant or Conveyance shall continue in force[, so][4] long as the said strips of land shall be used for Right of Way and for Railway purposes; but to cease and terminate if the Railway is removed from the said strips.

Now, more than a century after this deed was executed, we must determine the meaning of the foregoing language as used by the grantors and grantees.

The Walker/Joyce deed was recorded in Hubbard County on February 7, 1900. On June 29, 1901, the Brainerd and Northern

1. Thomas Barlow Walker was born on February 1, 1840, in Xenia, Ohio. Warren Upham, Minnesota Geographic Names: Their Origin and Historic Significance 93 (Minnesota Historical Society 1969). He came to Minnesota in 1862 and was the surveyor of parts of the St. Paul and Duluth railway line. *Id.* In 1868, he began purchasing tracts of pinelands and later built and operated large lumber mills in Crookston and elsewhere. *Id.* at 93–94. He resided in Minneapolis until he died on July 28, 1928. *Id.; In re Walker's Estate,* 184 Minn. 164, 166, 238 N.W. 58, 58 (1931). He maintained during his life "a very valuable and choice art gallery to which the public are freely welcomed," which later became the Walker Art Center. Upham at 94. The city of

Walker in Cass County is named after him. *Id.* at 93.

2. " _____ ," as used here, indicates that the writing is illegible.

3. *Amici curiae* Rails–To–Trails Conservancy and Parks and Trails Council of Minnesota suggest in their joint brief that this sentence is meant to relinquish rights of dower. We agree that, given the context, this is probably so, but note that on the record before us we cannot construe this portion of the deed with certainty.

4. What is written immediately before the word "long" is illegible on the available copy of the deed. However, both parties have treated the deed as reading "so long as."

Minnesota Railway Company conveyed its interest in the subject property to the Minnesota and International Railway Company, later known as the Burlington Northern Railway Company (BNRC). This deed was recorded on August 1, 1901. BNRC thus became the successor in title to the Brainerd and Northern Minnesota Railway Company's interest in the subject property and used it as the corridor for a railroad line.

In 1985, BNRC discontinued service on 193.12 miles of its railroad line between Brainerd and Bemidji and between Bemidji and International Falls. It did so after it received a certificate of abandonment from the Interstate Commerce Commission (ICC) allowing discontinued service on the rail line. During the abandonment proceeding, the Minnesota Department of Transportation (MnDOT) requested a 120–day public use condition that would allow it to negotiate for the acquisition of approximately seven miles of the 193.12–mile corridor for trail use and 30 miles to be set aside for a potential tourist rail line. When the ICC granted the certificate of abandonment, it found that "[p]ortions of the right-of-way are suitable for other public purposes." However, the ICC denied MnDOT's request to declare the segment of the property between Bemidji and International Falls "suitable for public use for acquisition as part of the State Rail Bank Program."[5] The ICC noted that a "public use" did not include keeping the track and materials intact for future rail freight use and that MnDOT had failed to submit the required information for seeking a public use condition.

After the ICC granted BNRC's request for abandonment of portions of its railroad line, BNRC unsuccessfully attempted to sell the Brainerd/Bemidji corridor as a tourist railway line. No tourist line was ever established. BNRC then removed the tracks, bridges, and ties from the corridor in either 1986 or 1987. In 1988, the Minnesota Legislature authorized the DNR to purchase the corridor between Baxter and Bemidji in order to create the Paul Bunyan State Trail. BNRC subsequently conveyed the corridor to the DNR by a quitclaim deed dated September 13, 1991, which deed was recorded December 31, 1991. Consideration for the corridor was $1.526 million. The DNR opened the Paul Bunyan State Trail for public use in December 1991. The trail extends approximately 90 miles from Baxter to Bemidji, passing through Crow Wing, Cass, Hubbard, and Beltrami Counties. Residents and tourists presently use the trail for hiking, bicycling, horseback riding, and snowmobile riding.

On August 10, 1977, respondents Brian and Amelia Sandberg acquired a parcel of land in Hubbard County lying east of and bordering the railroad corridor at issue here. At the time of this acquisition, the railroad line was still operational. On July 29, 1993, the Sandbergs acquired an adjoining parcel of land that is bisected by the Paul Bunyan State Trail. On October 11, 1995, the Sandbergs acquired a third parcel of land east of and bordering the trail. The trail was visible and open for public use at the time of the Sandbergs' second and third acquisitions.

On December 8, 1992, respondent Duwayne Hess acquired approximately 210 acres of real property in Hubbard County that is partially adjacent to and is partially bisected by the Paul Bunyan State Trail.

**5.** The State Rail Bank program allows the State of Minnesota, through MnDOT, to reserve abandoned rail lines "for the acquisition and preservation of abandoned rail lines and rights-of-way * * * for future public use including trail use." Minn.Stat. § 222.63, subd. 2 (2002).

The trail was visible and open for public use at the time that Hess acquired his property.

In October 1998, the Sandbergs and Hess began blockading the Paul Bunyan State Trail where it crossed their respective properties. The blockade caused the trail to be disjointed and caused public users to travel onto private property to get back onto the trail. The DNR received numerous complaints from trail users expressing frustration with having to go around the blockaded portions. In May 2002, construction equipment was spotted on the Sandbergs' property adjacent to the trail. According to a DNR employee, it appeared that excavation work had taken place, resulting in the removal of trees and bushes. Topsoil was removed from and stockpiled onto the trail. Apparently, the Sandbergs were building a driveway. The record reflects that it is not necessary for the Sandbergs to use the trail to access their property.

In February 2002, appellant State of Minnesota, through the DNR, initiated this quiet title action, seeking a declaration that the DNR owns the parts of the Paul Bunyan State Trail being blockaded by the Sandbergs and Hess. On May 31, 2002, the Hubbard County District Court issued a temporary injunction prohibiting the Sandbergs from driving vehicles on the trail, digging in the right-of-way, and using the trail as a driveway. The parties filed cross motions for summary judgment. On October 9, 2002, the court issued an Order and Memorandum granting the DNR's motion for summary judgment and denying the Sandbergs' and Hess's motion for summary judgment. The court concluded that the DNR owns the property in question in fee simple. On July 29, 2003, the court of appeals reversed the district court. *State ex rel. Dept. of Natural Res. v. Hess,* 665 N.W.2d 560 (Minn.App.2003). The DNR petitioned for review and we granted that petition.

 On review of a grant of summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). The facts of this case are largely undisputed and both parties urge that summary judgment should have been granted in their favor.

The DNR urges us to reverse the court of appeals and adopt the district court's conclusions of law. The district court concluded that the 1898 Walker/Joyce deed conveyed a fee simple determinable, subject to the limitation "so long as the said strips of land shall be used for Right of Way and for Railway purposes; but to cease and terminate if the Railway is removed from the said strips." Having concluded that the interest conveyed in 1898 was a fee simple determinable, the court went on to conclude that the DNR owns the subject property in fee simple. It did so because notice of a claim to the contrary was not given within 40 years of the 1898 deed; thus, all limitations on the conveyance were extinguished in accordance with the Marketable Title Act, Minn.Stat. § 541.023 (2002).

Hess and the Sandbergs urge us to affirm the court of appeals, which concluded that the 1898 Walker/Joyce deed created an easement for a right of way rather than a fee simple determinable. After concluding that the 1898 deed conveyed an easement, the court of appeals went on to conclude that the BNRC abandoned its easement when it ceased railway operations and removed its tracks from the corridor following receipt of the certificate of abandonment from the ICC. Based on these conclusions, the court of appeals held that the district court erred in its interpre-

tation of the law and Hess and the Sandbergs were the fee owners of the land in question.

## I.

The issue before us requires us to take a close examination at what constitutes an easement and what constitutes a fee simple determinable. A fee simple determinable is an interest in real property subject to the limitation that the property reverts to the grantor upon the occurrence of a specified event. *Consol. Sch. Dist. No. 102 v. Walter*, 243 Minn. 159, 163, 66 N.W.2d 881, 884 (1954). A fee simple determinable is typically conveyed through language with the operative words "until," "so long as," or "during," which indicate that the grantor retains a possibility of reverter upon the occurrence of the stated event or condition. *See id.* at 163 n. 14, 66 N.W.2d at 884 n. 13; *see also* 2 Powell on Real Property ¶ 187 (1989). An easement, in contrast, is an entitlement to the use or enjoyment of the land rather than an interest in the real property itself. *See Minneapolis Athletic Club v. Cohler*, 287 Minn. 254, 258, 177 N.W.2d 786, 789 (1970) (citing Restatement (First) of Property, § 450 (1944)). An easement does not convey an estate; rather, it passes only a right of use. *See Walter*, 243 Minn. at 161, 66 N.W.2d at 883 (citing Restatement (First) of Property, § 471 (1944)).

### A. Prior Case Law

We have considered deeds that convey an interest in a strip of land to a railroad company before. In *Chambers v. Great Northern Power Co.*, 100 Minn. 214, 219, 110 N.W. 1128, 1129–30 (1907), we held that title to land acquired in condemnation proceedings for right of way purposes was in the nature of either an easement or a fee simple determinable. We concluded in *Chambers* that "a mere easement was

granted," rather than a fee simple absolute. *Id.* at 219, 110 N.W. at 1129–30. We recognized, however, that the distinction between an easement and a fee simple determinable was immaterial to the resolution of the case.

> It [is] immaterial whether the title amounted to a mere easement, or a qualified or terminable fee. Whatever the nature of the title, it would terminate whenever the company failed to perform the very function which it was created to perform, viz., operate a railroad over the land.

*Id.* at 219, 110 N.W. at 1130.

In *Norton v. Duluth Transfer Ry.*, 129 Minn. 126, 131, 151 N.W. 907, 908 (1915), we again considered the nature of the conveyance to a railroad company by a deed purporting to convey land for right of way purposes. In *Norton*, the appellants argued that the deed at issue "conveyed an absolute fee title limited only as to use, namely, railroad right of way purposes, and that a failure to use it for that purpose or at all would not terminate the absolute title thus granted." *Id.* at 129, 151 N.W. at 908. We held that the conveyance of a strip of land to a railroad company for a right of way conveyed an easement rather than the absolute title for which the appellants in *Norton* argued. 129 Minn. at 131, 151 N.W. at 908.

Five years later, in *Chicago Great W. R.R. v. Zahner*, 145 Minn. 312, 314, 177 N.W. 350, 350 (1920), we held that a warranty deed conveying portions of two lots to a railroad conveyed an easement. As in *Norton*, we reasoned that the intent of the parties was to "limit the grant" and held that the interest conveyed was an easement rather than a "fee." *Zahner*, 145 Minn. at 314, 177 N.W. 350. In *Norton* and *Zahner*, we did not discuss whether the conveyances at issue could have been fees simple determinable. Presumably,

we did not discuss the distinction between an easement and a fee simple determinable because, as we had recognized in *Chambers,* the interests at issue would have reverted to the grantors upon the termination of their use regardless of the distinction. Although we referred to the conveyances as easements in *Norton* and *Zahner,* the distinction between an easement and a fee simple determinable was not material to the outcome of the cases. For this reason, we conclude that *Norton* and *Zahner* provide limited guidance to us in determining whether the interest conveyed by the 1898 Walker/Joyce deed was an easement or a fee simple determinable.[6]

6. The dissent disagrees with our analysis of our prior cases. This is a crucial point and one in which we have major disagreement. The dissent argues that *Norton* did distinguish between an easement and a fee simple determinable: "[a]n 'absolute fee title limited only as to use' *is* a fee simple determinable." It is clear from the discussion in *Norton,* however, that the appellants had argued that the deed at issue conveyed a fee simple absolute, limited only by the restriction that it could be used only for railroad purposes. *Norton,* 129 Minn. at 129, 151 N.W. at 908. This is *not* a fee simple determinable, i.e., not an interest in real property subject to the limitation that the property reverts to the grantor upon the occurrence of a specified event. *See Cons. Sch. Dist. No. 102,* 243 Minn. at 163, 66 N.W.2d at 884. There was no reason for the appellants in *Norton* to argue, or for us to discuss, whether the conveyance at issue in *Norton* was a fee simple determinable. As in *Chambers,* the distinction between an easement and a fee simple determinable was not material to the case.

For similar reasons, it is also clear from our analysis in *Zahner* that the issue before us was only whether the conveyance was an easement or a fee simple absolute. Our analysis in *Zahner* was minimal. *Zahner* states that the conveyance was not a "fee" and does not discuss whether the conveyance could have been a fee simple determinable because the distinction between an easement and a fee simple determinable was not material to resolution of the case. 145 Minn. at 314, 177 N.W. at 350.

Moreover, even if in *Norton* and *Zahner* we had discussed the possibility that the conveyance was a fee simple determinable, the analysis would not be binding on us. This is so because when *Norton* was decided in 1915, it *would not have made any difference to the outcome of the case whether the conveyance was labeled an easement or a fee simple determinable.* The dissent is suggesting that an issue that is irrelevant to the outcome of a case is part of the holding of the case. We do not believe this is compelling. Considerations made in a judicial opinion that are unnecessary to the decision in the case are dicta. *See State v. Rainer,* 258 Minn. 168, 178, 103 N.W.2d 389, 396 (1960).

Our conclusion that *Norton* and *Zahner* provide limited guidance to the issue before us is also buttressed by the following commentary:

Throughout most of the 19th century, courts made fine distinctions among the various types of property rights the railroads could acquire. But by 1900, anti-railroad animus caused many courts to hold that all ambiguities and presumptions were to be resolved in favor of the grantor landowners. *The result was that many courts simply imposed a binary structure on railroad title disputes: either the railroad acquired fee simple absolute title, allowing it to do virtually anything it wanted with its land, even if it had discontinued services and abandoned certain parcels, or the railroad merely acquired an easement or a right-of-way over the original landowner's land, extinguishable under principles of abandonment.* This binary structure elides important differences among the different property interests and their methods of acquisition.

\* \* \* \*

Judges who believe they are making things simpler by consistently finding that railroad corridor instruments always convey easements are mistaken. \* \* \* The nature of railroad use demands that the servient fee owner has something less than a fee subject to an easement, and the easement owner has something closely approaching fee title. Fitting the interests into common-law categories is counter productive.

Danaya C. Wright & Jeffrey M. Hester, *Pipes, Wires, and Bicycles: Rails–to–Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth Century to the*

## B. The Marketable Title Act

*Chambers, Norton,* and *Zahner* were decided before the adoption of the Marketable Title Act, Minn.Stat. § 541.023, in 1943, which now makes it material whether a limited interest conveyed is an easement or a fee simple determinable. *See Wichelman v. Messner,* 250 Minn. 88, 105, 83 N.W.2d 800, 815 (1957). The declared policy of the Marketable Title Act is to prevent restrictions on uses that have not been reasserted as a matter of record within the last 40 years from "fetter[ing] the marketability of title." Minn.Stat. § 541.023, subd. 5 (2002). We have recognized that the passage of the Marketable Title Act was "a marked departure from the policy and operation underlying our land transfer system." *Hersh Properties, LLC v. McDonald's Corp.,* 588 N.W.2d 728, 734 (Minn.1999). The Act represents "a new point of departure for the process of judicial reasoning" in real estate law. *Wichelman,* 250 Minn. at 99, 83 N.W.2d at 812 (internal quotation marks omitted).

The adoption of the Marketable Title Act is important to our analysis for two reasons. First, the Marketable Title Act now makes the difference between an easement and a fee simple determinable material to the issue before us because, as we later discuss, an interest in fee simple determinable may be subject to the Act's conclusive presumption of abandonment. Second, public policy reasons behind the Marketable Title Act, such as finality of conveyances and enforcing settled expectations, should be considered in our framework for analyzing the intent of the parties in a conveyance of land for right of way purposes in a deed.[7]

Following the passage of the Marketable Title Act, we considered in *Walter* whether the conveyance of a small tract of a larger parcel of real property used as a schoolhouse site was an easement or a fee simple determinable. 243 Minn. at 161–62, 66 N.W.2d at 883–84. In *Walter,* the deed at issue conveyed the premises "In Trust

---

*Twenty–First Centuries,* 27 Ecology L.Q. 351, 377, 384–85 (2000) (citations omitted) (emphasis added).

7. The public policy interests that underlie this issue are well described by Wright and Hester as follows.

> Rural farms, bisected by a corridor, are now residential subdivisions with an undeveloped greenbelt providing recreational and utility services. When the trains did not discontinue operations until the past decade or so, the land rights of the railroads and the adjacent landowners had coexisted, in most cases, for over 100 years. Many landowners may have come and gone in that time and successive deeds may have dropped references to the railroad corridor. Quieting the interest in the long-term user makes sense on many different levels.
>
> Property law doctrines, first and foremost, try to prevent upsetting settled expectations. Finding fee title in the railroad would further the public policy of quieting title that underlies our doctrines of adverse possession, the rule against forfeitures, marketable title acts,

the rule against perpetuities, and rules against transfers of future interests. This is especially true when there is little, if any, expectation on the part of adjoining landowners to receive the windfall of a rail corridor.

> Moreover, a strong public interest exists in preserving these corridors for trails and utilities. Perhaps the strongest policy motive in favor of the railroads is that evidenced by federal regulations concerning railroad services and the abandonment of rail corridors. * * * To the extent that deed construction can further protect the public's interest, especially when the cost to landowners is minimal, the courts have an obligation to realize that the public is a party to these cases as well. When landowners do not have title to the corridor land, heirs of the grantor are long gone, and the corridor can continue to provide vital public utility, recreational, environmental, and transportation services, there is no reason to continue the century-old anti-railroad animus that prevailed in the days of frontier expansion.

Wright & Hester, *supra* n. 6, at 385–86 (citations omitted).

\* \* \* for the use, intent and purpose of a site for a School House for the use of the Inhabitants of said School District." *Id.* at 160, 66 N.W.2d at 882. The deed also provided that "whenever said School House ceases to be used as the Public School House for the use of the Inhabitants of said School District then the said Trust shall cease and determine and the said land shall revert to [the grantors]." *Id.* Importantly, the deed did not use the word "forever" in the conveying language.

We held in *Walter* that the deed conveyed a fee simple determinable with a possibility of reverter because "the intent of the grantor, as expressed in the deed and in light of the surrounding circumstances, was to convey the land to the school district in fee for so long as it was needed for the purpose given." *Id.* at 162, 66 N.W.2d at 883. We concluded that *Norton* and *Zahner* did not apply "[b]ecause of the particular factual situations in those cases." *Id.* at 161–62, 66 N.W.2d at 883.

### C. The 1898 Walker/Joyce Deed

■■■ With our prior cases and the effect of the Marketable Title Act as background, we turn now to an analysis of the 1898 Walker/Joyce deed. To determine the nature of the conveyance at issue, we look to the deed to ascertain and give effect to the intention of the parties to the instrument. *Walter,* 243 Minn. at 162, 66 N.W.2d at 883; *Lawton v. Joesting,* 96 Minn. 163, 166–67, 104 N.W. 830, 831–32 (1905). In construing the deed, we "must consider all parts of it, and the construction must be upon the entire deed, and not upon disjointed parts." *Id.* at 167, 104 N.W. at 832. If the deed's language is ambiguous, we may look to evidence of the surrounding circumstances and the situation of the parties to cast light upon their intention. *Id.*

A review of cases from other jurisdictions reveals that there is considerable conflict in the way courts construe the nature of deeds purporting to convey land where there is also a reference to a right of way or a reference to the purpose of the conveyance. *See* A.E. Korpela, Annotation, *Deed to Railroad Company as Conveying Fee or Easement,* 6 A.L.R.3d 973 (1966). The decisions usually turn on a case-by-case examination of each deed. *See id.*

■■■ For the foregoing reasons, we must begin our examination of the 1898 Walker/Joyce deed by looking to the granting language to determine the intent of the parties as to the nature of the conveyance. The deed's granting clause expressly conveys land rather than mere use of the land, stating that the grantors "hereby grant, bargain, sell and convey unto the said company, its successors and assigns, a strip, belt or piece of land." The deed also contains a habendum clause, which is a provision in a deed that traditionally could "explain, enlarge, or qualify, but [could not] contradict or defeat, the estate granted." *New York Indians v. United States,* 170 U.S. 1, 20, 18 S.Ct. 531, 42 L.Ed. 927 (1898). We must, however, read the granting and habendum clauses together "in order to arrive at the true intention, even to the extent of allowing the habendum to qualify or control the granting clause where it was manifestly intended that it should do so." *Youngers v. Schafer,* 196 Minn. 147, 153, 264 N.W. 794, 798 (1936) (internal quotation marks omitted). In the 1898 deed, the habendum clause states:

> Provided that this Grant or Conveyance shall continue in force[, so] long as the said strips of land shall be used for Right of Way and for Railway purposes; but to cease and terminate if the Railway is removed from the said strips.

Here, we conclude that the use of the phrase "so long as" in the habendum clause provides clear evidence of the grantors' intent to convey a determinable fee because the phrase "so long as" is typically used in a conveyance of a fee simple determinable. *See, e.g., Walter,* 243 Minn. at 162, 66 N.W.2d at 883–84; *see also McKusich v. County Comm'rs Washington County,* 16 Minn. 151, 157 (Gil.135, 139–40)· (1870) (1870) (recognizing fee simple determinable).

▮▮▮▮▮▮ The habendum clause also states that the land shall be used "for Right of Way and for Railway Purposes." Courts have long recognized that use of the phrase "right of way" is ambiguous because the phrase may be used to describe either (1) " 'a right belonging to a party, a right of passage over any tract' " or (2) the physical " 'strip of land which railroad companies take upon which to construct their road-bed.' " *Bosell v. Rannestad,* 226 Minn. 413, 418, 33 N.W.2d 40, 43–44 (1948) (quoting *Joy v. City of St. Louis,* 138 U.S. 1, 44, 11 S.Ct. 243, 34 L.Ed. 843 (1891)). Reference to a "right of way" in a conveyance has been frequently cited as evidence that a conveyance is an easement, but use of the phrase does not necessarily mean that a conveyance is an easement. *See, e.g., Grill v.*

*West Virginia R.R. Maint. Auth.,* 188 W.Va. 284, 423 S.E.2d 893, 896–97 (W.Va. 1992); *Maberry v. Gueths,* 238 Mont. 304, 777 P.2d 1285, 1287–88 (1989). Moreover, Minnesota law does not presume that a conveyance of land to a railroad for "right of way" purposes is an easement.[8]

The phrase "right of way" is used in the 1898 deed to indicate its purpose, which, even if we were to interpret the phrase as being used to indicate a mere right of passage, does not provide much evidence of the parties' intent as to the nature of the conveyance. As the Iowa Supreme Court has recognized:

> Determining the nature of the interest conveyed by reference to the intended use by the grantee seems frivolous in matters involving narrow tracts of land acquired by railroad companies. There is but one single reason for all such conveyances irrespective of whether the deed conveys a fee or an easement. As we stated in *Turner v. Unknown Claimants of Land,* 207 N.W.2d 544, 546 (Iowa 1973), "[o]rdinarily the parties know the tract will be used for a railway; for what other purpose would a railroad purchase a strip of land across a farm."

*Lowers v. United States,* 663 N.W.2d 408, 410–11 (Iowa 2003) (holding that deed la-

8. Subdivision 6 of the Marketable Title Act, which provides exceptions for persons in possession of real estate from the requirement of filing notice of their interests, refers specifically to "reservations or exceptions of land for right-of-way or other railroad purposes contained in deeds of conveyance" as exceptions to the subdivision. Minn.Stat. § 541.023, subd. 6 (2002). While this reference to reservations of land for right of way or other railroad purposes does not help us in determining the parties' intent as to the nature of the 1898 Walker/Joyce deed, it casts substantial doubt on respondents' argument that *Norton* and *Zahner* represent a clearly established presumption that a grant to a railroad company that limits the use of the prop-

erty granted in some fashion, such as by using the phrase "right of way," conveys an easement. The Marketable Title Act protects "claim[s] of title based upon a source of title," Minn.Stat. § 541.023, subd. 1 (2002), which means that the Act protects only titles in fee simple. *Wichelman,* 250 Minn. at 105, 83 N.W.2d at 815. The Marketable Title Act itself thus presumes that "reservations or exceptions of land for right-of-way or other railroad purposes contained in deeds of conveyance" are *not necessarily* easements. To the extent that *Norton* and *Zahner* could be read to suggest that *any* conveyance of a right of way to a railroad is an easement, they are no longer good law.

beled "Rt. of Way Deed" conveying a narrow tract of land to a railroad company conveyed a defeasible fee rather than an easement). Therefore, we conclude that the 1898 Walker/Joyce deed's reference to a "right of way" as the purpose of the conveyance does not necessarily make the conveyance an easement.

Other language beyond the granting clause and the habendum clause of the 1898 Walker/Joyce deed provides additional evidence that the grantors conveyed a fee simple determinable. The deed includes a legal description of a corridor of land that is 100 feet in width, but also describes the conveyance of four additional strips of land that increase the width of the corridor up to 200 feet, beyond what would appear necessary for a railway easement. In addition, the deed uses different language for the grant of an easement to the railroad company to erect snow fences up to 100 feet beyond the edges of the corridor. Specifically, the deed provides:

> And with the right to said Company, its successors and assigns to protect cuts which may be made on said lands, by erecting on both sides of, or within one hundred and fifty feet from the said center line, Portable snow Fences.

▇▇▇ Awareness by the parties to a deed of the distinction between the conveyance of an easement and a fee simple can illustrate the intent of the parties as to the nature of the larger conveyance. *King County v. Rasmussen*, 299 F.3d 1077, 1087 (9th Cir.2002). Here, the parties used the term "right" to grant the snow fence easement as opposed to the phrase "grant, bargain, sell and convey," which the parties used to describe the conveyance of the "strip, belt or piece of land" at issue. We conclude that both the language used for the additional strips of land that increase the width of the corridor, and the use of the term "right" to grant the snow fence easement, indicate that the parties to the 1898 Walker/Joyce deed understood the distinction between the conveyance of an easement and an interest in fee simple, and intended to convey an interest in land rather than mere use of the land.[9]

▇▇▇ Another feature of the 1898 deed that casts light on the intent of the parties is the grantors' apparent release of dower rights. "Dower rights" are an interest that a wife has in the real estate of her husband. *Stitt v. Smith*, 102 Minn. 253, 254, 113 N.W. 632, 633 (1907). An easement, because it is not title to land, does not relinquish dower rights when it is conveyed. *Chicago & S.W. R.R. v. Swinney*, 38 Iowa 182, 182 (Iowa 1874); 28 C.J.S. Dower and Curtesy § 12 (1996). The presence of the release of dower rights in the deed, while not dispositive, and unclear in this case, provides further evidence of intent to convey a fee interest rather than an easement. *See Brewer & Taylor Co. v. Wall*, 299 Ark. 18, 769 S.W.2d 753, 755 (1989).[10]

Further, because the 1898 Walker/Joyce deed is ambiguous as to its intent to convey a fee simple determinable or an ease-

---

9. The dissent concludes that this provision granting the railroad company permission to erect snow fences suggests that the intent of the parties was to create an easement because if the conveyance had been a fee simple determinable, the railroad company would have had title to the property and would not have needed such permission. We emphasize, however, that the deed granted the railroad company permission to erect snow fences *up* to 100 feet further out from the edges of the corridor than the conveyance at issue. A party would naturally seek separate permission to erect snow fences on land that has not been conveyed.

10. See notes 2 and 3, *supra*, regarding the uncertainty of the deed language on this issue.

ment, we may also look to extrinsic evidence of the surrounding circumstances of the parties in relation to the conveyance, such as the subsequent conduct of the parties. *Troseth v. Troseth*, 224 Minn. 35, 36, 28 N.W.2d 65, 65 (1947); *see Brown v. State*, 130 Wash.2d 430, 924 P.2d 908, 912 (1996). On June 17, 1901, W.T. Joyce and Clotilde G. Joyce, grantors in the 1898 deed, conveyed by deed their interest to land in Hubbard County adjacent to the railway corridor created by the 1898 deed. The Joyces' 1901 deed described the land conveyed and then provided:

> Excepting and reserving there from the land heretobefore conveyed to the Park Rapids and Leech Lake Railway and to the Brainerd and Northern Minnesota Railway for right-of-way.

■ The term "excepting," when used in a deed, typically indicates that nothing passes. *Carlson v. Duluth Short Line Ry.*, 38 Minn. 305, 306, 37 N.W. 341, 341 (1888). Furthermore, a conveyance that intends to reference a preexisting easement typically indicates that the conveyance is "subject to" the easement. *See Hersh Properties, LLC*, 588 N.W.2d at 730. For these reasons, the Joyces' 1901 deed excepting from the conveyance "the land heretobefore conveyed" provides additional support that the parties to the 1898 Walker/Joyce deed intended to convey title in fee simple determinable. By excepting the land conveyed in 1898 from their 1901 conveyance, the Joyces demonstrated an understanding of the 1898 deed a mere three years later that they no longer owned the land conveyed in 1898. *See King County*, 299 F.3d at 1087 (concluding that a subsequent deed by grantors conveying property "less (3) acres right of way of Rail Road" indicated that the railway owned the strip of land and did not merely have a right to use the land).

For all of the foregoing reasons, we agree with the district court and conclude that the parties to the 1898 Walker/Joyce deed did not intend to convey a mere easement for use of the land. Rather, we conclude that the parties intended to convey real property in fee simple determinable, subject to the limitation that the conveyance would "cease and terminate if the Railway is removed from the said strips." We believe this conclusion reflects the intent of the parties. We also believe this conclusion best serves many of the policy reasons underlying the Marketable Title Act, which, as we next discuss, should be applied to the interest conveyed in the 1898 Walker/Joyce deed. Accordingly, we reverse the court of appeals and hold that the 1898 deed conveyed title in fee simple determinable.[11]

## II.

■ Having concluded that the interest conveyed by the 1898 Walker/Joyce deed was a fee simple determinable, we next consider, as the district court did, whether the DNR now owns the property in fee simple absolute because of the effect of the Marketable Title Act, Minn.Stat. § 541.023. The Marketable Title Act provides, in relevant part:

11. The dissent attempts to distinguish many of the cases we cite to from other jurisdictions which support our decision. The dissent points out specific issues that distinguish those cases, going so far as to call our analysis "troubling." Here, the dissent misses the point. Courts in other jurisdictions consider many factors in ascertaining the intent of the parties as it relates to the nature of the conveyance—whether the conveyance was an easement or a fee simple determinable. We discuss many of those factors here. Our conclusion, based on the numerous factors that point to the conveyance being a fee simple determinable, is that a fee simple determinable more accurately characterizes the intent of the parties to the conveyance at issue.

As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person, partnership, corporation, other legal entity, state, or any political division thereof, to enforce any right, claim, interest, incumbrance, or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded in the office of the county recorder in the county in which the real estate affected is situated, a notice sworn to by the claimant or the claimant's agent or attorney setting forth the name of the claimant, a description of the real estate affected and of the instrument, event or transaction on which such claim is founded, and stating whether the right, claim, interest, incumbrance, or lien is mature or immature.

Minn.Stat. § 541.023, subd. 1 (2002). The central tenet of the Marketable Title Act is that a determination of title should be possible from an examination of documents in the chain of title recorded in the 40–year period preceding the title search. *Hersh Properties, LLC,* 588 N.W.2d at 734. An interest is subject to the Marketable Title Act's conclusive presumption of abandonment and cannot be asserted against a claim of title based on a source of title unless the interest is preserved by filing a notice within 40 years of the creation of the interest. *Id.* at 735; Minn. Stat. § 541.023, subds. 1 and 5 (2002).

■ For the Marketable Title Act to extinguish an interest, two requirements must be met. First, "the party desiring to invoke the statute for his own benefit must have a requisite 'claim of title based upon a source of title, which source has then been

of record at least 40 years.'" *Wichelman,* 250 Minn. at 112, 83 N.W.2d at 819. Second, "the person against whom the act is invoked must be one who is 'conclusively presumed to have abandoned all right, claim, interest ...' in the property." *Id.*

The DNR asserts that it has the requisite "claim of title based upon a source of title" from the 1898 Walker/Joyce deed, recorded in 1900, in which the Brainerd and Northern Minnesota Railway Company conveyed its interest in the property to BNRC. It is undisputed that this source has been of record for at least 40 years and that an estate in fee simple determinable is a source of title under the Marketable Title Act. *Wichelman,* 250 Minn. at 106, 83 N.W.2d at 815–16. Having concluded that the subject property conveyed in 1898 was in fee simple determinable, we conclude that the DNR has the requisite "claim of title based upon a source of title."

The second requirement for extinguishment of the interest is also met. The record before us indicates that no notice of claim based on the possibility of reverter has been filed of record. Therefore, under Minn.Stat. § 541.023, subd. 5, we conclude that a presumption of abandonment arose and the Marketable Title Act extinguished the possibility of reverter created in the 1898 Walker/Joyce deed to the railroad company.

Because the possibility of reverter in the 1898 Walker/Joyce deed was extinguished, we conclude that no genuine issues of material fact exist or remain for decision. Accordingly, we reverse the court of appeals and hold that the district court was correct when it granted summary judgment for the DNR because the DNR owns the subject property in fee simple absolute as a matter of law.

Reversed.

HANSON, J., took no part in the consideration or decision of this case.

BLATZ, Chief Justice (dissenting).

Because I believe that *Norton v. Duluth Transfer Ry.*, 129 Minn. 126, 151 N.W. 907 (1915), and *Chicago Great W. R.R v. Zahner*, 145 Minn. 312, 177 N.W. 350 (1920), are controlling and that the cases cited by the majority are distinguishable from this case in important respects, I respectfully dissent. As noted by the majority, the meaning our court accords "right of way" as used in the 1898 deed is outcome determinative because of the Marketable Title Act (hereinafter "MTA"), which is only applicable to and extinguishes interests that convey title, not easements. Minn. Stat. § 541.023 (2002).[1] Applying the reasoning set forth in our precedent to the plain language of the 1898 Walker/Joyce deed (hereinafter "1898 deed"), in my view, suggests a conclusion that the interest conveyed by the grantors was an easement that was, in turn, abandoned.

The majority presents an accurate explanation of the distinction between a fee simple determinable and an easement, an analysis that becomes less clear when a deed references both "land" and a "right." This confusion is often rooted in a deed's use of the phrase "right of way," which has a twofold meaning. This twofold meaning was addressed by the United States Supreme Court in *Joy v. City of St. Louis*, 138 U.S. 1, 48, 11 S.Ct. 243, 34 L.Ed. 843 (1891), when it articulated two possible interpretations of "right of way" as follows: "[The term 'right of way'] sometimes is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed." However, the paramount concern in determining the rights of parties arising from a deed, as articulated by this court on numerous occasions, is that we must look to the intent of the parties, and the intent is to be gathered, not from any particular provision or clause of the document, but from an examination of the document as a whole, construing all of its provisions together. *See e.g., Cement, Sand & Gravel Co. v. Agricultural Ins. Co. of Watertown, N.Y.*, 225 Minn. 211, 216, 30 N.W.2d 341, 345 (1947); *Norton*, 129 Minn. at 130, 151 N.W. at 908; *Witt v. St. Paul & N.P. Ry. Co.*, 38 Minn. 122, 123, 35 N.W. 862, 864–65 (Minn.1888).

Thus, in order to discern what interest the 1898 deed conveyed, we must examine the intent of the grantors of the 1898 deed and Minnesota case law to determine whether a fee simple determinable or an

---

1. Subdivision 6 of the MTA, which provides exceptions to the general rule that a party must file notice of its interest in the possession of real estate—and specifically excludes railroads from the exception—refers to "reservations or exceptions of land for right-of-way or other railroad purposes contained in deeds of conveyance made by a railroad company or by trustees or receivers thereof." The majority, in a footnote, acknowledges that this subdivision does not help this court "determine[] the parties' intent as to the nature of the 1898 Walker/Joyce deed," but then goes on to state that it rebuts the suggestion of a "clearly established presumption" that a grant to a railroad company that has a limitation based on use, and uses the phrase "right of way," conveys an easement, because the subdivision would not be necessary if such a presumption existed. No such presumption has been articulated nor exists in Minnesota law. The court of appeals stated below that when interpreting a deed a court must look to the intent of the parties and construe all provisions of the instrument together, which affirms the notion that no such presumption exists. *State v. Hess*, 665 N.W.2d 560, 563 (Minn.App.2003). More importantly, however, the MTA only supports the majority's assertion insofar as the majority argues that there is no presumption that *any* conveyance to railroad is an easement. The MTA does not support the majority's assertion that the MTA presumes the possibility of *right of way* conveyances being more than easements.

easement was conveyed. To begin, we turn to *Norton*, the precedent of our court that interprets virtually identical deed language as that at issue here. The granting language of the *Norton* deed provided as follows:

"Witnesseth: That the said parties of the first part, in consideration of the sum of thirteen hundred and twenty-five dollars to them in hand * * * do, by these presents, grant, bargain, sell, and convey unto the said party of the second part, its successors and assigns, all that tract or parcel of land lying and being in the county of St. Louis, and state of Minnesota * * *."

129 Minn. at 130, 151 N.W. at 908. Like the 1898 deed at issue in the instant case, following a description of the land conveyed, the *Norton* deed set forth a habendum clause that read:

"To HAVE AND TO HOLD THE SAME * * * so long as the same shall be used as a right of way for tracks and side tracks and a railroad way for its railroad cars, locomotives and trains and for proper appendages to such track or tracks and railway, and for any other uses consistent with or embraced in the purposes and general nature of the business of said grantee * * *."

*Id.* Examining the deed as a whole, we held in *Norton* that the language of the deed evinced the parties' intention to convey an easement, stating, "The deed contains no language indicative of an intention that an absolute and unqualified title should pass to the grantee." *Id.* at 131, 151 N.W. at 908. We acknowledged the "limitations upon the estate" in the habendum clause, and went on to hold:

The only conclusion, as it seems to us, is that the parties intended by the deed to convey to the company an easement only, and to vest in the company the right to hold and use the land so long as

it was devoted to the purpose stated, and no longer.

*Id.* In reaching this holding we noted the absence of the word "forever" in the granting clause, which we viewed as a significant word, typically indicating the transfer of title. *Id.*

Subsequent to our decision in *Norton*, we interpreted even less explicit language than used in *Norton* as conveying an easement—and not a fee interest—to a railroad company. In *Zahner*, 145 Minn. at 314, 177 N.W. at 350, we held that a deed conveyed an easement when it first stated that the land in dispute was conveyed to the grantee, "its successors and assigns, forever," and went on to convey, "such portions of lots three and four being deemed necessary and to be used for a track contemplated and to be laid by said Chicago Great Western Railway Company on said land for commercial purposes." *Id.* In that case, we determined that the conveyance was an easement even though the granting clause contained the term "forever," which we had typically interpreted as conveying a fee interest. *See id.* at 314, 177 N.W. at 351.

In the instant case, the grant of conveyance language expressly states that the conveyance is only for "so long as the said strips of land shall be used for Right of Way," and does not include the term "forever." Given the nearly identical language of the 1898 deed before us and the language at issue in the *Norton* deed, as well as our broad view of what constitutes an easement in *Zahner*, I would conclude that the 1898 deed conveys an easement.

The majority argues that *Zahner* and *Norton* are not on point because both cases deal with possible fee simple *absolutes*. This assertion by the majority is overstated. In *Zahner*, the court referred only to a "fee," and did not specify whether the "fee" considered was absolute, de-

terminable, or otherwise. 145 Minn. at 314, 177 N.W. at 350. In *Norton*, it was the appellant who framed the argument as one between an absolute fee title and an easement. We, however, framed the appellant's argument in *Norton* as follows: "That the Norton deed to the transfer company conveyed an absolute fee title limited only as to use, namely, railroad right of way purposes * * *." 129 Minn. at 129, 151 N.W. at 908. An "absolute fee title limited only as to use" *is* a fee simple determinable. *See id.* Within that framework—fee simple determinable *versus* easement—we held that, "The deed contains no language indicative of an intention that an absolute and unqualified title should pass to the grantee." *Id.* at 131, 151 N.W. at 908. We were free to conclude that the conveyance was a fee simple determinable, but did not, and instead held it to be an easement. *Id.* Consequently, contrary to suggestions by the majority, *Zahner* and *Norton* are not distinguishable on these grounds.

Further, the majority's contention that *Norton* and *Zahner* can only provide "limited guidance" in the determination of this case because they never considered the distinction between an easement or a fee simple determinable, due to the fact that the court did not need to make such a distinction previous to enactment of the MTA, is erroneous and somewhat circular in reasoning. In determining whether an easement or fee simple determinable is created we look to the language of the deed to discern the intent of the parties, not subsequent legislation that could not have played a role in the intention of the granting party. Our case law consistently focuses on the intention of the parties as the predominant deciding factor in determining the type of interest conveyed by an instrument, and not subsequent legislation enacted decades after a deed is drafted. *See, e.g., Cement, Sand & Gravel Co. v.*

*Agric. Ins. Co., N.Y.,* 225 Minn. 211, 216, 30 N.W.2d 341, 345 (1947); *Norton,* 129 Minn. at 130, 151 N.W. at 908; *Witt v. St. Paul & N. Pacific Ry.,* 38 Minn. 122, 127, 35 N.W. 862, 864–65 (1888). In other words, the fact that there was no MTA when *Norton* was decided is immaterial as to whether the conveyance *created* an easement or a fee simple determinable. Rather, the enactment of the MTA is significant as to what happens *after* an easement or fee simple determinable is created. It is not significant nor helpful in determining whether the parties conveyed an easement or fee interest in the first instance.

Further support for my conclusion that the parties intended to convey an easement can be found in a separate provision of the 1898 deed allowing for the construction of snow fences. The deed authorizes the railroad company to erect snow fences on both sides of the conveyed property, or within 150 feet of the railway's center line. The specific language used stated:

> And with the right to said Company, its successors and assigns to protect cuts which may be made on said lands, by erecting on both sides of, or within one hundred and fifty feet from the said center line, Portable snow Fences.

If the conveyance now in dispute had been a fee simple determinable, as suggested by the Department of Natural Resources (hereinafter "DNR") and the majority, the grantees would have had title to the property and would not need permission, as given in this clause, to erect snow fences within one hundred fifty feet of the center line of the railway. More clearly stated, the 1898 deed first conveys a 100–foot wide piece of property. If this conveyance had been intended to be a fee simple determinable, the deed would not have had to also provide for an easement

to build snow fences within that 100–foot corridor *and* extending further out to the sides. Instead, if the conveyance were a fee simple determinable, the deed would have only had to provide an easement of "X feet" beyond the borders of the 100–foot corridor. Consequently, the fact that an additional use of the land is allowed within the portion of the land already conveyed—for snow fences instead of mere operation of a railway—suggests that the grantors intended to convey an easement in the first conveyance rather than a fee simple determinable. The snow fences are an additional easement, or other possible use, of the land conveyed.

The majority ignores this point and uses reasoning that is internally inconsistent. The majority first concludes that the deed creates a 100–foot fee simple determinable and states that this conclusion is supported by the fact that the drafters of the deed knew how to create an easement because of the language it used to create the snow fence easement. It then glosses over this fact, noting simply that the snow fence easement language gives the railroad a 150–foot easement—over property the majority has just said was given in fee to the railroad.[2]

Finally, in dismissing the importance of *Norton* and *Zahner*, two cases involving the issue of whether an easement to a railroad was conveyed, the majority relies heavily on *Consol. Sch. Dist. No. 102 v. Walter*, 243 Minn. 159, 66 N.W.2d 881 (1954), and an Iowa Supreme Court case, *Lowers v. United States*, 663 N.W.2d 408 (Iowa 2003). *Walter* involved the conveyance of a trust of real property by Ebenezer Ayres and his wife to Common School District No. 29, whose ownership preceded that of Consolidated School District No. 102. 243 Minn. at 160, 66 N.W.2d at 882–83. The deed conveyed the real property to the school district in trust "for the use, intent and purpose of a site for" a schoolhouse. *Id.*, 66 N.W.2d at 882. The deed further specified that if the schoolhouse ceased to be used for the citizens of the school district as such, the trust "shall cease and determine *and the said land shall revert to* [the Ayres]." *Id.* (emphasis added). Focusing on the words "determine" and "revert," we held that although not technically precise, the conveyance of interest "more closely resembles that used in a conveyance of a determinable fee." *Id.* at 163, 66 N.W.2d at 884. In addition to the fact that *Walter* involved the conveyance of real estate in trust, the deed contained no similar language to the 1898 deed at issue in the instant case. For example, the *Walter* deed had no "grant, bargain, s[ale][nor] convey[ance]" of "land" language, no mention of a "right of way," no separate habendum clause, no use of the phrase "so long as," and the deed used the phrase "shall revert" in its limiting language—a strong indication of a fee simple determinable. *See id.* at 160, 66 N.W.2d at 882.

We also stated in *Walter* that in the *Norton* and *Zahner* cases "the court properly gave effect to the unmistakable intent of the parties" and that "[b]ecause of the

---

2. The majority also suggests that the release of dower rights by the grantors, which is not legible in the deed, indicates the grantors' intent to convey a title in fee. However, while the majority cites to other jurisdictions, a search of Minnesota law reveals we have never held that a release of dower rights is an indication of a grantor's intent to convey a fee interest rather than an easement. Further, the Arkansas case cited by the majority, stating that the presence of a release of dower rights in a deed *may* suggest the conveyance of a fee interest, actually holds that the conveyances at issue were easements, despite the release of dower rights. *See Brewer & Taylor Co. v. Wall*, 299 Ark. 18, 769 S.W.2d 753, 756 (1989).

particular factual situations in those cases, we do not feel they have application here." *Id.* at 162, 66 N.W.2d at 883. While the majority relies heavily on *Walter* and implies that *Walter* is similar in context to this case, the dissimilarity of the *Walter* facts, the distinctions in the deed language, and the court's own statements do little to shore up the majority's reasoning.

*Lowers* is of equally nominal value to the issues before us. While it is true that the Iowa Supreme Court held that a deed granting a narrow tract of land to a railroad company conveyed a defeasible fee rather than an easement, the court based its reasoning on the absence of particular language that can be found in the 1898 deed. *See* 663 N.W.2d at 410–11. Specifically, the court held that the conveyance in that case was a fee simple determinable because "a line of cases * * * [holding] that a conveyance for right of way is presumed to grant only an easement" needed "some reference to right-of-way in the language defining the interest being conveyed" to prevail, and the conveyance at issue did not include reference to a right of way.[3] *Id.* at 411. This was obviously the "lynch pin" for the Iowa Supreme Court, because in concluding that the deed did not convey an easement, the court stated, "No mention of a right of way, either in terms or by words of necessarily equivalent meaning, is to be found in any of the deeds [at issue]." *Id.* (quoting *Des Moines City Ry. v. City of Des Moines,* 183 Iowa 1261, 159 N.W. 450, 452 (1916)). Conse-

quently, *Lowers* is inapposite and irrelevant to this case, where the 1898 deed before us clearly conveyed "strips of land [that] shall be used for *Right of Way.*" (Emphasis added).

Moreover, in addition to the absence of "right of way" language, the Iowa Supreme Court noted that the habendum clause of the deed at issue did not "state any limitation on the interest conveyed. It provides that the railroad company shall 'Have and Hold the same...forever.' " *Id.* This is a significant distinction from the 1898 deed in this case, which lacks the word "forever" and instead states that the conveyance shall "cease and terminate if the Railway is removed from the said strips." Given the clear import of the *Lowers* decision, it is troubling that the majority cites to *Lowers* and lifts language out of it to support its position. The Iowa Supreme Court's reasoning and the deed itself clearly undermine the conclusions reached by the majority.

Finally, the other cases cited by the majority for the proposition that a right of way deed conveyed fee title are distinguishable from this case in one obvious and important way. Each of the cases dealt with deeds that did not contain *any* limiting language—they were merely grants to railroad companies with no language similar to that in the habendum clause of the 1898 deed—and most of the courts noted that this was an important factor in reaching their decisions.[4] *See,*

---

3. While the title of the document in *Lowers* admittedly was "Rt. of Way Deed" the Iowa Supreme Court made a point of noting that the caption of a legal document does not effect or limit the interest in the body of the document. 663 N.W.2d at 411 (citing *Robert's River Rides, Inc. v. Steamboat Dev. Corp.,* 520 N.W.2d 294, 300 (Iowa 1994) (construing an instrument titled "lease" as a mere license)).

4. In *King County v. Rasmussen,* the 9th Circuit noted:

In virtually all cases where Washington courts have found only an easement, the granting or the habendum clauses contained such language [limiting the use of the land to a specific purpose]." *See Swan v. O'Leary,* 37 Wash.2d 533, 225 P.2d 199 (1950) (granting premises "for the purpose of a Railroad right-of-way"); *Morsbach v. Thurston County,* 152 Wash. 562, 278 P.

*e.g., King County v. Rasmussen,* 299 F.3d 1077, 1086 (9th Cir.2002); *Grill v. W. Virginia R.R. Maintenance Auth.,* 188 W.Va. 284, 423 S.E.2d 893, 894–95 (1992); *Maberry v. Gueths,* 238 Mont. 304, 777 P.2d 1285, 1288 (1989). Therefore, those cases are of little value to us when interpreting deed language which clearly limited the conveyance by stating that it was to "continue in force so long as the said strips of land shall be used for Right of Way, and for Railway purposes; but to cease and terminate if the Railway is removed from the said strips."

Accordingly, given the intent of the parties as recorded in the deed's language, our case law, and the distinctions that can be drawn between the facts before us and those set forth in the cases relied on by the majority, I would hold that the limiting language of the 1898 deed conveyed an easement. Like the majority, I too am supportive of the trail system developed in our state. Nonetheless, I strongly believe that such public policy concerns must at all times be anchored in the law as it exists. For that reason, the majority's over-reliance on one law review article to support its public policy reasoning is troubling, particularly when taken in combination

with the nonexistent and/or meaningless distinctions it makes when comparing similar deed language and the decided case law. Our responsibility is to decide the issues at hand in the context of the law as it is. To hold otherwise is to overturn previous case law, and the majority admits no such alteration in the law.

Because I would hold that the 1898 deed conveyed an easement, the issue of whether the easement has been abandoned would also have to be addressed, because if it has been abandoned, respondents would have title to the property at issue. Abandonment may occur when "the owner of the dominant estate has made no use of [an easement] and his [or her] conduct is such as to evidence intention to abandon." *United Parking Stations, Inc. v. Calvary Temple,* 257 Minn. 273, 278, 101 N.W.2d 208, 212 (1960). Mere failure to use an easement does not necessarily extinguish it. *Simms v. Fagan,* 216 Minn. 283, 291, 12 N.W.2d 783, 787 (1943). A claim of abandonment can be upheld only where nonuse is accompanied by affirmative and unequivocal acts indicative of an intent to abandon and is inconsistent with the continued existence of the easement. *Town-*

686, 687 (1929) (conveying a "right of way for the construction of said company's railroad"); *Pacific Iron Works v. Bryant Lumber & Shingle Mill Co.,* 60 Wash. 502, 111 P. 578 (1910) (holding that deed providing "to have and to hold the said premises ... for railway purposes, but if it should cease to be used for a railway the said premises shall revert to said grantors" granted easement); *Reichenbach v. Washington Short Line Ry.,* 10 Wash. 357, 38 P. 1126 (1894) (construing deed which provided "so long as the same shall be used for the operation of a railroad" as an easement); *King County v. Squire Inv. Co.,* 59 Wash.App. 888, 801 P.2d 1022 (1990) (granting premises to railroad "so long as said land is used as a right-of-way by said railway Company, Expressly reserving to said grantors their heirs and assigns all their riparian rights ...").

299 F.3d at 1086.

In *Brown v. State,* 130 Wash.2d 430, 924 P.2d 908, 912 (1996), the Washington Supreme Court stated, when discussing a previous case, "Recognizing a railroad can hold rights of way in fee simple or as easements, we held the deed granted an easement based on the specifically declared purpose that the grant was a right of way for railroad purposes, and there was no persuasive evidence of intent to the contrary." (Citations omitted).

Consequently, under the majority's reasoning Minnesota would be at odds with the laws of other states, which hold that specific limiting language in a right of way deed constitutes the conveyance of a mere easement.

*ship of Sterling v. Griffin,* 309 Minn. 230, 236, 244 N.W.2d 129, 133 (1976). The easement holder's intention to abandon "need not appear by express declaration, but may be shown by acts and conduct clearly inconsistent with an intention to continue the use of the property for the purposes for which it was acquired." *Norton,* 129 Minn. at 132, 151 N.W. at 909.

Here, the easement was conveyed for the purpose of operating a railroad right of way. The removal of the railway from the corridor in 1986 or 1987 was clearly inconsistent with an intention to continue using the property for the operation of a railroad right of way. Because Burlington Northern Railroad Company's (hereinafter "BNRC") interest, as set forth in the habendum clause, terminates "if the Railway is removed from the said strips," the removal of the railway from the corridor in 1986 or 1987 would constitute abandonment of the easement.

In this respect, this case again resembles *Norton.* In *Norton,* where the language of the deed was strikingly similar to the 1898 deed, and the railway had been removed from the corridor, this court held that:

> In the case at bar the right of way was granted to the transfer company for and so long as it continued to occupy and use the same for railroad purposes. The grantee was a public service corporation, charged with certain duties and obligations in supplying facilities to other like corporations. By the abandonment of the road, by taking up and removing the track from the line in question, the Northern Pacific Co. relieved itself from the discharge of those duties and obligations.

129 Minn. at 132, 151 N.W. at 909. Applying the same reasoning set forth in *Norton,* I would conclude that the BNRC abandoned the easement in 1986 or 1987 and did not have any interest to transfer to the DNR in 1991.

In summary, I would hold that the 1898 deed conveyed an easement to the BNRC, which was abandoned when "the Railway [was] removed from the said strips." Because the railway was removed in 1986 or 1987, I would hold that the easement was abandoned.